Butler *v.* State.*

(En Banc. June 9, 1924. Suggestion of Error Overruled Aug. 28, 1924.)

[101 So. 193. No. .23934.]

1. Arrest. *Search without warrant of sack dropped by defendant while fleeing from arrest which policeman had no authority to make held unlawful.*

Where policeman, who had no warrant for defendant's arrest, and who did not know at the time he undertook to arrest defendant and search his possessions that defendant was committing a crime in his presence, fired at defendant while defendant was running from him and caused defendant to drop sack, the policeman's search of the sack without a warrant was unlawful.

2. CRIMINAL LAW. *Evidence obtained by illegal search and seizure inadmissible.*

Evidence obtained by means of illegal search and seizure *held* inadmissible.

3. ARREST. *No arrest without warrant for misdemeanor not committed in officer's presence.*

An arrest cannot be made for a misdemeanor without a warrant, unless the offense was committed in the officer's presence.

---

*Headnote 1. Arrest, 5 C. J., section 74 (1925 Anno); 2. Criminal Law, 16 C. J., section 1110; 3. Arrest, 5 C. J., section 32.

APPEAL from circuit court of Adams county.

HON. R. L. CORBAN, Judge.

Eli Butler was convicted of having possession of more than one quart of intoxicating liquor, and he appeals. Reversed and remanded.

*Engle & Laub,* for appellant.

If this court is to uphold the rule as laid down in *Tucker v. State,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377, then this case must be reversed and the defendant discharged. Defendant, under the Tucker case, was entitled to the full benefit of sections 23 and 26 of the Mississippi Constitution of 1890. In the instant case, testimony shows that no crime was being committed by the appellant in the presence of the officer. He was simply walking along the street of the city, and the officer did not know that the appellant had whiskey in his possession. The officer had no warrant for the arrest of the appellant; therefore, had the officer arrested the appellant, he would have done a thing that he had no right to do. And had the officer searched the person of the appellant, he not holding a

search warrant, as the testimony shows, the evidence which he would have obtained could not have been produced at the trial when objected to, as it was by the appellant.

The question resolves itself into this proposition: whether or not evidence obtained by shooting at the appellant and putting him in fear, and compelling him to drop the package, can be used upon the trial. It would be nullifying the force and effect of the very spirit, itself, of section 23 of our Constitution were the testimony obtained by this officer at the point of his pistol allowed to stand. He cannot do indirectly that which the law forbids him to do directly, that is, violate the person of the appellant without having a search warrant. If the court sustains the admissibility of evidence obtained in this way, evidence obtained by a violation of laws intended for the protection of the citizen, then it will be a warrant to all policemen to go forth and shoot at citizens at will, sneak upon them in the dark and if the citizen tries to protect himself from the danger of being accosted in the dark and takes to his heels, then the policemen may shoot at him and may kill him, as frequently happens. Are all the liberties of the citizen to be swept aside and regardless of how unlawful the police officer conducts himself, are the courts to sanction his conduct by admitting in evidence the fruits of his unlawful act? *Silverthorne Lumber Company* v. *U. S.*, 251 U. S. 385, 64 L. Ed. 319; 40 Sup. Ct. Rep. 182.

*F. S. Harmon,* Assistant Attorney-General, for the state.

Appellant cannot so stretch the Tucker case as to cover himself with the immunity which it confers. There was no violation of the state Constitution. The protection therein vouchsafed is a protection of a person, the home, and the possessions. The testimony here shows that there was no search without a warrant either of Eli's person,

his house or his possessions. This liquor was not taken
from him. He dropped the package on a public street
following the mandate of St. Paul, where he urged that
we "lay aside every weight and the sin which doth so
easily beset us." It is true that Eli did not follow the in-
junction of the great apostle "to run with patience the
race that is set before us," but it is quite evident that
Eli did run, and proved his ability to qualify as a mara-
thon runner.

Who knows but that the package slipped from his arm?
All that the record shows is that it dropped to the street.
Eli did not take the stand and testify specifically as to
why he dropped it. All that the officer saw was that Eli
started running and having begun the race, "laid aside
this weight." No attempt is being made here to justify
the officer for shooting at Eli. If the officer went beyond
his authority in so doing, Eli has a legal right of action
therefor, but the fact that the officer fired three shots does
not constitute either an unreasonable search or seizure.
This was no search; there was no seizure, to be either
reasonable or unreasonable. The officer had a legal right,
in fact it was his duty, to pick up a package dropped on
the street regardless of the circumstances under which
it came there, and when he did pick it up and found the
package to be a jar of liquor, having seen the same in the
possession of Eli, though he did not take it from him or
search him for it, he did have a right, a crime having been
committed in his presence, namely, the unlawful posses-
sion of more than a quart of liquor, to have the man ar-
rested and to testify as to having seen this package in his
possession.

HOLDEN, J., delivered the opinion of the court.

This is an appeal by Eli Butler from a conviction on a
charge of having in his possession more than a quart of
intoxicating liquor, and imposing a penalty of two hun-
dred and fifty dollars and sixty days in jail. Reversal is

urged upon several grounds, none of which will be discussed, except the contention that the evidence introduced by the state, showing the appellant had the liquor in his possession, was inadmissible because it was obtained unlawfully by a search and seizure without a warrant for that purpose; the decision of this point will end the case.

The case is quite unusual in its facts, which we shall briefly state as follows: Eli was walking down one of the streets of Natchez about 4 o'clock in the morning, with a charcoal bag under his arm which contained, as it afterwards developed, a vessel of whisky. A policeman of the city followed Eli for some distance and commanded him to stop, whereupon Eli began to run. The policeman ordered him to stop, and fired three pistol shots at him, which caused Eli to drop his sack to the sidewalk, and he continued to increase his speed which enabled him to get away from the officer. The policeman, after running past the bag some distance, and seeing that he could not catch Eli nor make him stop returned to the sack, searched it, and took it with him to the police station, where it was opened, finding the vessel of liquor therein, and this prosecution followed.

Objection was made to this testimony in the lower court on the ground that it was secured by an unlawful seizure and search, and was therefore inadmissible under the Constitution, as announced in the *Tucker Case,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377.

We think the point is well taken, and that the testimony of the policeman under the circumstances disclosed by this record was unlawfully obtained and inadmissible against Eli.

The record shows the policeman had no warrant to arrest Eli nor to seize his personal possessions and search them. Eli was not violating the law in the presence of the officer so far as the officer knew at the time he undertook and commenced to make the unlawful arrest of Eli and search of his possessions, to-wit, the charcoal bag belong-

ing to Eli. The officer not only had no authority to arrest the appellant, but he was violating the criminal laws of the state when he undertook to do so by firing upon him.

Eli did not drop his sack until the officer had fired at him three times, which undoubtedly caused him to drop the bag which the officer then seized and searched.

The conduct of the officer was unlawful from beginning to end, and, while this ignorant negro with his charcoal sack may have intentionally thrown it upon the sidewalk or abandoned it after being fired upon, yet if he did so it was caused by the unwarranted attempt of the officer, to arrest him and seize his possession for the purpose of searching it. This was, in effect, a forcible seizure and search of the private possession of Eli, and the officer was not justified in doing so without first obtaining a warrant for that purpose. *U. S. F. & G. Co.* v. *Hardy,* 121 Miss. 369, 83 So. 610.

We have read the testimony of the officer in this record wherein he says he deliberately shot at the appellant when he ran; and it appears that he had no right whatever to do so under the law. We here quote a portion of his testimony:

"Q. What did you do when he ran? A. Shot at him. I says, 'If you don't stop I will shoot you.'

"Q. How many times did you shoot at him? A. Three times.

"Q. When you shot at him what did he do with this package? A. Dropped it.

"Q. Was it holding him back—that is, carrying the package? A. I don't know, it might have been holding him back.

"Q. After he dropped the package he moved faster than before, didn't he? A. I didn't have no speedometer to see how fast he was running.

"Q. You shot three times at him, and he dropped the package? A. Yes, sir.

"Q. What did you do then? A. I turned around and picked the package up. . . .

"Q. Now when you came back to the package, what did you do with it? A. Picked it up and brought it to the station house.

"Q. You examined it? A. I picked it up and examined it.

"Q. That was the first time you found out what was in the bag, when you picked it up? A. Yes, sir.

"Q. Did you have in your possession any warrant for the arrest of Eli Butler? A. No, sir.

"Q. Did you have any search warrant to search his person? A. No, sir; after I picked the stuff up, I brought it on to the station house, and I showed it to the chief of police, and he asked me if I knew who it was that dropped the bag, and I told him I did, and he asked me who it was, and I told him it was Eli Butler. . . ."

There is no law in this state authorizing an officer, or any other person, to shoot and kill a citizen who is fleeing from arrest for a misdemeanor; nor can an arrest be made for a misdemeanor without a warrant, unless the commission of the offense was in the presence of the officer; and, finally, it has been repeatedly announced by this court that persons and possessions shall be secure from unlawful search and seizure.

Officers are to be commended in the lawful performance of their duties, but the citizen has his sacred rights which must be respected and preserved.

Since writing the above views the very recent case of *Hester* v. *U. S.,* 44 Sup. Ct. 445, 68 L. Ed.—, decided by the supreme court of the United States May 5th last, has come to our attention, and, as this decision appears in some respects to be applicable to the case before us, we have carefully examined this federal decision, and find that it does not hold contrary to our views in the case at bar.

The difference between the two cases lies chiefly in this: In the federal case the seizure was made when the officers

actually recognized the liquor as moonshine whisky, and no search was made, nor was it necessary to search because the liquor was visible to the officers, whereas in the instant case there was a search and seizure of the bag containing the liquor, for which the officer had no search warrant, nor a warrant for the arrest of the appellant who had committed no criminal offense in the presence of the officer.

It will be seen that the main difference in the two cases is that there was an unlawful search in one and no search at all in the other. It might also be pointed out there is another difference, viz., that the shooting at the appellant by the policeman in Natchez caused appellant to drop the sack containing the liquor, while this fact does not definitely appear in the other case. It will not do to say that a search warrant is not required to search the possessions of a citizen, but that all that is necessary is that the officer shoot at him a few times and make him drop his baggage and then proceed to search it without a warrant. We do not think searches without a warrant can be made in this violent and unlawful manner.

*Reversed and remanded.*