D'AQUILLA *v.* ANDERSON *et al.**

(Division B. Jan. 21, 1929. Suggestion of Error Overruled March 4, 1929.)

[120 So. 434. No. 27591.]

*Corpus Juris-Cyc References: Animals, 3CJ, section 147, p. 51, n. 97; Constitutional Law, 12CJ, section 959, p. 1194, n. 82; Officers, 46CJ, section 327, p. 1043, n. 5; Trespass, 38Cyc, p. 1050, n. 34.

*Jones & Stockett,* for appellant.

*Tucker & Tucker,* for appellees.

Argued orally by *P. M. Stockett,* for appellant.

ETHRIDGE, P. J. The appellant, D'Aquilla, filed a suit against the appellees, alleging that on or about the 13th of November, 1926, the defendants did by force of arms, and without his consent, enter his inclosed premises at Ft. Adams, in Wilkinson county, and tie and take away a calf, the property of plaintiff, valued at ten dollars; the said trespass being willful and wanton, and without authority of law, and defendants thereafter failed and refused to return the calf so illegally taken away; by reason of which trespass and conversion of the property of plaintiff the latter has been damaged in the sum of five hundred dollars.

The defendants pleaded the general issue, and gave notice thereunder that on the trial of the cause they would introduce evidence to prove that Anderson and Clarence Ward were commissioned by the state live stock sanitary board as range riders, and that they were officers of the law in tick eradication work in the county; that Hugh Rodgers was commissioned by the Federal Bureau of Animal Industry as an agent and officer of the law to enforce the rules of the state live stock sanitary board in tick eradication work; that the plaintiff was duly notified to dip all his cattle, horses, mules, jacks, and jennets; that he failed and refused to dip the calf, and the defendants, under and by authority of the law, took possession of said calf, dipped and quarantined it, and placed it in the custody of the sheriff, who sold it for ten dollars, for its feed and care, under the law; and there is now due the sheriff a balance of three dollars seventy-five cents for care of the calf.

On the trial of the case, the defendant Rodgers was asked, on cross-examination:

"Q. Did you have any papers of any kind? A. Only my commission as a livestock inspector."

He was also asked:

"Q. Who authorized you to go in that lot? A. My commission by the livestock sanitary board."

Anderson testified to like effect, and introduced his commission from the live stock sanitary board, as live stock inspector, as authority for their entry into the lot of the plaintiff, the taking therefrom the calf, over his objections, and without his knowledge and consent, dipping the same, and turning it over to the sheriff. We quote the following from the commission, relied upon as authority for this entry and taking of the calf:

"This certifies that Mr. Nolan Anderson, Woodville, Mississippi, has been this day commissioned as a live-stock inspector for the state of Mississippi, in accordance with section Three, House Bill 206, Laws of 1926, and is hereby authorized and empowered to enter premises to inspect and disinfect livestock and premises and enforce quarantine, including counties, farms, pens, stables and other premises. In witness thereof the said state Livestock Sanitary Board has caused this commission to be signed by its duly authorized executive officer and to be sealed with its seal this first of May, 1926.

"[Signed] R. V. Rafnel; and the seal of the Live-stock Sanitary Board."

The testimony further shows that, when the calf was taken from the lot, the plaintiff claimed to the officers that the calf had been exempted, and offered to dip it himself if they would let him do so; but they refused to do so, dipped it themselves, and refused to turn it over to him unless he paid a charge of eight dollars for their dipping of the calf. With reference to this expense, the witness stated:

"Q. What were the expenses? A. Eight dollars.

"Q. How did you arrive at the amount? A. Three of us at one hundred forty dollars per month, and I figured

that eight dollars would not quite cover it all, but we had another cow.

"Q. How did you arrive at eight dollars? A. I figured at sixteen dollars, and eight dollars was half of it.

"Q. Did you collect for the other cow? A. Nobody claimed it.

"Q. On what legal basis did you charge your fees? A. According to what we were getting paid.

"Q. According to your salary? A. Yes, sir."

There was a peremptory instruction for defendants in the court below, from which this appeal is prosecuted.

There was no introduction of any ordinance or rule or regulation of the livestock sanitary board in evidence, and, as stated above, there were no legal papers of any kind taken out by the officer to secure possession of the calf, but, without any such writ or papers, the defendants went into the inclosed premises, took the calf, and dipped it, and, without any statutory authority, made the charge of eight dollars for so doing, basing the said charge upon the *pro rata* of one day to a month's salary of each of the three officers involved. In other words, the whole proceeding appears to have been based upon the authority of the commission issued by the live stock sanitary board, and the officers assumed that they had the right to fix the charge on the basis of their monthly salaries.

Chapter 265 of the Laws of 1926, section 9, is relied upon as the authority of the live stock sanitary board to act in the premises. Under the title, "Procedure when the owner fails to dip," section 9 provides: "Cattle, horses, jacks, jennets or mules infested with or exposed to the cattle tick (Margaropus Annulatus), in any county known to be partly or wholly infested with such tick, the owner or owners of which, after five days' written notice from a live stock inspector, or such animals as are provided for under section 8, shall fail or refuse to dip such animals at a time and place designated in such notice and regularly every fourteen days thereafter until re-

leased, in a vat properly charged with arsenical solution, under the supervision of a live stock inspector, said cattle, horses, jacks, jennetts or mules shall be dipped, quarantined and placed in the custody of the sheriff, by the live stock inspector. Suitably fenced areas for holding such cattle while in the custody of the sheriff shall be provided by the board of supervisors.''

Section 10 provides as follows: ''Any expense incurred in the enforcement of section 9 of this act, or for feed, care and handling of such animals while undergoing the process of tick eradication, and any expense incurred in handling, dipping, confining, feeding or pasturing of any animals while in the custody of the sheriff shall constitute a lien upon such animal or animals to be paid by the owner or owners of the animals before the same are released by the sheriff. Should the owner or owners of cattle, horses, jacks, jennetts and mules which have been placed in the custody of the sheriff as herein provided, fail or refuse to pay said expenses after five days notice, they shall be sold by the sheriff of the county after ten (10) days advertising, either by notice at court house door and two other public places in the neighborhood of the place at which the animal was taken up for the purpose of tick eradication or in the newspaper published in the county having general circulation therein.''

Section 11 provides the penalty for violation of the rules and regulations of the live stock sanitary board, making the same a misdemeanor.

It will be noticed, from a reading of chapter 265, Laws 1926, that methods of seizure are not provided for. Presumably the legislature intended existing remedies to be applied to enforce the provisions of the act. The act does not, in terms, authorize the range riders or the sheriff to enter the inclosed premises and seize and take away property of the owner without demand. If possession is refused on demand, then appropriate legal proceedings, including an opportunity to be heard by the

person owning the cattle or live stock in some tribunal authorized by law to pass upon the question, should be taken.

Section 23 of the Constitution prohibits searches and seizures except upon probable cause, supported by an affidavit. But this alone would not authorize a seizure. The law must provide in what case a seizure and search can be made, and it cannot be made contrary to the prohibitions of the Constitution. Section 14 of the State Constitution, and the Fourteenth Amendment to the Federal Constitution, provides that no person shall be deprived of life, liberty, or property except by due process of law. The legislature could not authorize the live stock sanitary board to do what it could not do itself. Certainly the live stock sanitary board could not confer authority in a mere commission of an officer to enter premises and seize property without conforming to the above provisions of the Constitution.

One of the first things an officer should learn on assuming the duties of office is the law bearing on his office and its duties. He does not become the law of the land by assuming office, and can do no act unless the law authorizes him to do so, which will affect any other person's rights, property, or liberty. As no ordinance of the live stock sanitary board was introduced, we have no way of knowing whether any of the regulations or rules pertinent to this matter existed. But we know that a mere commission was not sufficient authority for the acts which were here done. The officers, having acted without legal authority, are clearly liable to the plaintiff for their invasion of his premises and the seizure of his property.

Under a former statute, the supreme court held that an injunction would lie to compel an owner to conform to the dipping laws. *McMillan* v. *Live Stock Sanitary Board,* 119 Miss. 500, 81 So. 169.

Section 14 of the act repealed certain former laws, which repeal included the law the court acted upon in

that decision. It may be that the officers had a right to replevy the cattle to get possession of them, but it is certain that before they could take them they must either have the consent of the owner or some legal possession.

In *Wilson* v. *Kuykendall*, 112 Miss. 486, 73 So. 344, the court said: ''Under the law a party has not the right to invade the premises of another and take from the possession of the other party by force or against the will of the party in possession any property, even though he may have title thereto. He must in such case resort to court to obtain possession if the party in possession refuses on demand to deliver the property.''

It is true, the defendants here were officers, but they had no legal process to serve, and what was said in that case is applicable here to one before us. The court was accordingly in error in granting the peremptory instruction for the defendant, but should have granted a peremptory instruction on liability for plaintiff and impaneled the jury to assess the damages.

The judgment of the court below will therefore be reversed, judgment rendered here establishing liability, and the cause remanded to the court below, with instructions to issue writ of inquiry and assess the damages.

*Reversed and remanded.*