MARTIN *et al. v.* STATE.

(In Banc.   Dec. 9, 1940.)

[199 So. 98.   No. 34168.]

34

**Hilton & Kendall,** of Jackson, for appellants.

**W. D. Conn, Jr.,** Assistant Attorney-General, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This is an appeal from a judgment making final a judgment nisi on a bail bond.

An affidavit charging Martin with the commission of a felony was made and lodged with the Clerk of the Circuit Court of Smith County, who issued a warrant thereon for the arrest of Martin, returnable instanter before the Judge of the Circuit Court of Smith County "at my office at Raleigh in said county and state." The sheriff of the county arrested Martin on this warrant and admitted him to bail, the bond therefor requiring him "to appear before the circuit court of Smith County, in said state, instanter, to answer the charge," etc. Ten days thereafter a judgment was rendered by the circuit judge reciting that Martin had failed to appear, awarding the State

a recovery on the bond, and directing that the sureties thereon be summoned to appear and show cause why the judgment should not be made final. The sureties appeared at a later term of the court, and, over their protest, the judgment nisi was made final.

Several questions are presented by the record, error in all of which is admitted by the Assistant Attorney General. At least one of these questions, which as hereinafter appears, must be decided in the appellant's favor and will require a judgment here not only reversing the judgment of the court below but the dismissal of this proceeding on Martin's bond. That question is: Did the circuit clerk have the authority to issue this warrant? If he did not, Martin's arrest was unlawful, the sheriff was without authority to hold him in custody, and the bond by which he was set at large is void, unless it is valid under Section 1246, Code 1930.

1. Did the circuit clerk have authority to issue this warrant? Section 2934, Code 1930, applies to the clerks of all courts, but only as to process issuing out of the courts of which they are clerks, and obviously has no application here. No other source has come under our observation from which authority in a clerk of the circuit court to issue a warrant for the arrest of a person charged with the commission of a crime by an affidavit lodged with him can be derived, unless it be Section 167 of the State's Constitution of itself alone or in connection with the common law or Section 1321, Code 1930.

Section 167 of the Constitution is as follows: "All civil officers shall be conservators of the peace, and shall be by law vested with ample power as such." This section is self-executing only to the extent that it designates all civil officers as conservators of the peace, thereby charging them with the duty of keeping the peace. It does not provide ways and means for the discharge of this duty, which must be found either in the common law of this State, or in a statute enacted by the legislature thereof.

The inquiry into whether either of these sources provide such ways and means may best be begun by an examination of the common law, if any, pertaining to conservators of the peace.

A conservator of the peace, ex vi termini, is a person charged with the duty of keeping the peace. In England, prior to A. D. 1195, this duty was discharged by certain public officers charged therewith by virtue of their offices. In A. D. 1195, under a proclamation by the king's Justiciar, there came into existence another class of persons charged merely with the duty of keeping the peace, who became known as wardens or conservators of the peace. Prior to the reign of Henry the Second, persons charged with keeping the peace discharged that duty by preventing the commission of a crime in their presence, or arresting therefor when so committed. Whether this authority was conferred by the common law or by edict of the king is by no means clear, but beginning with and after that reign their duties were prescribed, at first, by edict of the king, and, later, by statute. The second of the above classes of conservators of the peace were superseded by justices of the peace who came into existence during the reign of Edward the Third, and they soon disappeared from the English judicial system, so that in A. D. 1765, Lord Chief Justice Camden, in Entick v. Carrington, 19 St. Trials, 1029, 1062, could say ''the keeping of the peace being so completely transferred to and so engrossed by the justices, that the name of conservator is almost forgot.'' The powers and duties of justices of the peace, when acting as conservators of the peace, were gradually enlarged by statute until they came to be about the same as those with which our justices of the peace are now invested. All of this will appear from 1 Holdsworth's Hist. of Eng. Law, 286 et seq.; 1 Stephen's History of the Criminal Law, 185, 190; 2 Hawkins, P. C., 8th Ed., Chap. 8; 1 Black Com. 349, et seq. (2 Cooley's Blackstone, 4th Ed., 294); Smith v. Abbott, 2 Harr. 358, 17 N. J. L.

358; Marcuchi v. Norfolk, etc., Ry. Co., 81 W. Va. 548, 94 S. E 979; In re Barker, 56 Vt. 14; 1 Bouv. Law Dict., Rawles' Third Revision, p. 612; Black's Law Dic. 3rd Ed. 403; 15 C. J. S., Conservator, p. 984; 12 C. J. 522; 35 C. J. 449. Since no English statute, however ancient, is a part of the common law of this State (Boarman v. Catlett, 13 Smedes & M. 149; Jordan v. Roach, 32 Miss. 481), the authority and power of a conservator of the peace with us are such only as are defined and limited by a statute enacted by the legislature of the state, except to arrest for crimes committed in his presence, an authority possessed at common law and now by statute by every person. That such is the fact was recognized and acted on by the conventions which adopted the state constitutions of 1832, 1869, and 1890 (the one now in force).

Section 22 of Article IV of the Constitution of 1832, provided that ''The judges of all the courts of this State, and also the members of the board of county police, shall in virtue of their offices be conservators of the peace, and shall be by law vested with ample powers in this respect.'' Section 22 of Article VI of the Constitution of 1869 provided that ''Judges of all the courts of this state, and all other civil officers, shall, by virtue of their office, be conservators of the peace, and shall be, by law, vested with ample powers in that respect.'' Section 167 of the Constitution of 1890 has hereinbefore been set out.

A conservator of the peace having no common-law authority to issue a warrant for the arrest of a person charged with the commission of a crime by an affidavit filed with him, such authority must be found with us in a statute enacted by the legislature of this State. The only statute in which such authority could be found is Section 1321, Code 1930, when construed in connection with Section 167 of the Constitution. That section of the Code is as follows: ''Any conservator of the peace may, by warrant issued under his hand, cause any person charged on affidavit with having committed, or with

being suspected of, any offense against the law, to be arrested and brought before him, or before some other conservator of the peace in the proper county; and, on examination, the conservator of the peace shall commit the offender to jail if the offense be not bailable, and if it be bailable and the offender fail to find bail.''

The words ''any conservator of the peace'' would, of course, include all civil officers designated as such by Section 167 of the Constitution, unless, when construed in connection with other sections of the code, they appear to have a more restricted meaning. Section 1320, Code 1930, which the reporter will set out in full,[1] immediately preceding Section 1321, provides that ''The judges of the Supreme, circuit, and chancery courts and [are] conservators of the peace throughout the state, and each judge of the county court and every justice of the peace is such within his county. Any conservator of the peace has power,'' etc. It is manifest from its context that the word ''and'' in the second line of Section 1320 between the words ''chancery courts'' and ''conservators of the peace'' should be ''are.'' Any doubt thereof is cleared up when the section's prototype, Section 1460, Code 1892, which appears in the Code of 1906 as Section 1533 thereof, is examined, for the word there used was ''are.'' In order, therefore, to effectuate the legislative intent, the section must be construed as if the word ''are'' instead of ''and''

[1] ''1320. Conservators of peace—to bind over felons and other offenders to circuit court.—The judges of the Supreme, circuit, and chancery courts and conservators of the peace throughout the state, and each judge of the county court and every justice of the peace is such within his county. Any conservator of the peace has power to take all manner of bonds and recognizances from persons charged on affidavit with crimes and offenses, for their appearance in the circuit court to answer thereto, as well as for crimes and offenses committed in their presence; and if any person fail to give bond or enter into recognizance, with the sureties prescribed, when required to do so by a conservator of the peace, he shall be committed to the county jail, there to remain until he comply or be otherwise discharged by due course of law. Every bond or recognizance so taken shall be returned to the circuit court before its next term; and if any person so bound fail to appear in the circuit court, his bond or recognizance shall be adjudged forfeited, and otherwise proceeded with as provided by law.''

had been used. Roseberry v. Norsworthy, 135 Miss. 845, 100 So. 514, and authorities there cited.

An examination of the legislative history of Sections 1320 and 1321, Code 1930, and of conservators of the peace generally, will disclose that the two sections are essential parts of a complete legislative scheme and the words "any conservator of the peace" in Section 1321 apply, and are limited to the persons designated as conservators of the peace in Section 1320. Prior to the Code of 1892 the various legislatures conferred the powers of a conservator of the peace upon specific civil officers by separate statutes or sections of the codes designating them as conservators of the peace. This power was conferred not on all civil officers but only on a small number of them, e. g., judges of the various courts, justices of the peace, members of the boards of supervisors, and election commissioners; other officers, e. g., sheriffs and constables, were charged with the duty of preserving the peace and given limited powers therefor without being designated as conservators of the peace. When the Code of 1892 was adopted, all of the officers, except members of the boards of supervisors and election commissioners whom the legislature had theretofore been accustomed to designate as conservators of the peace, were grouped in Section 1460 thereof, now Section 1320, Code 1930, which was followed immediately by Section 1461, now Section 1321, Code 1930. Sections 1460 and 1461, Code 1892, were expressly made applicable to members of boards of supervisors by Section 286 of the same code, now Section 210, Code 1930. Sections 1460 and 1461, Code 1892, were taken from the statute the legislature had theretofore been enacting when conferring the powers therein set forth on justices of the peace, which first appeared in "An Act concerning the appointment, the jurisdiction, and the powers of justices of the peace within this state," enacted in June, 1822, and brought forward into Hutchinson's Mississippi Code at p. 688. Section 3 of the act begins

with the words "The justices of the peace of the several counties in this state shall be conservators of the peace within their counties," and then proceeds substantially, though not literally, as does Section 1460, Code 1892, now Section 1320, Code 1930. Section 4 of the act provides that "Any justice of the peace now in commission, or who may hereafter be appointed, shall, by warrant" etc., and then proceeds substantially, though not literally, as does Section 1461, Code of 1892, now Section 1321, Code 1930. These two sections of the Act of 1822 were brought into the Code of 1857 as Articles 328 and 329 of Chapter 64 thereof, p. 626; into the Code of 1871, as Sections 2821 and 2822 thereof; into the Code of 1880, as Sections 3112 and 3113 thereof, dealing in each instance with only the office of justice of the peace. Each of them was a part of a complete legislative scheme set forth in the two, and the second referred to and was limited by the first.

When Section 1460 of the Code of 1892, grouped all of the offices except that of boards of supervisors, to which the legislature had been accustomed theretofore to annex all or a part of the duties and powers of a conservator of the peace, and conferred on them the powers and duties as conservators of the peace theretofore conferred by the Act of 1822 and the sections of the codes of 1857, 1871, and 1880 hereinbefore designated, and the words "any justice of the peace" theretofore contained in Section 4 of the Act of 1822, brought forth into prior codes as hereinbefore set forth, were changed in Section 1461, Code of 1892, to "any conservator of the peace," it seems clear that the legislature intended the second section to refer to and be limited by the first, as had been the case theretofore. This conclusion is reinforced by the fact that the words "any conservator of the peace" in Section 1461, Code 1892, now Section 1321, Code 1930, also appeared in Section 1460, Code 1892, now Section 1320, Code 1930, and they there refer only to the persons designated therein as conservators of the peace. If the words "any con-

servator of the peace'' in these sections were not intended by the legislature to be limited to the persons designated as such in the first section, but were intended to apply to all civil officers made conservators of the peace by Section 167 of the Constitution, then the designation in the first section of particular officers as conservators of the peace was useless and serves only to confuse,—a result which we must presume, unless the contrary appears, that the legislature did not intend.

Section 6177, Code 1930, provides that ''While engaged in their duties, the [election] commissioners shall be conservators of the peace in the county, with all the duties and powers of such.'' What those duties and powers are, it is not necessary for us to decide; for if they confer on election commissioners the powers and duties of a justice of the peace when acting as a conservator of the peace, as to which we express no opinion, it would not follow therefrom that such powers are possessed by all civil officers merely because Section 167 of the Constitution required them to keep the peace.

A clerk of the circuit court being without power to issue a warrant for the arrest of a person charged with the commission of crime by an affidavit lodged with him, the arrest of Martin here made on a warrant issued by a circuit clerk was illegal, and the bond under which he was set at liberty is void, unless as hereinbefore said it is valid under Section 1246, Code 1930.

2. Section 1246, Code 1930, provides that, ''All bonds, recognizances, or acknowledgments of indebtedness, conditioned for the appearance of any party before any court or officer, in any state case or criminal proceeding, which shall have the effect to free such party from jail or legal custody of any sort, shall be valid and bind the party and his sureties, according to the condition of such bond, recognizance, or acknowledgment, whether it was taken by the proper officer or under circumstances authorized by law or not, or whether the officer's return identify it

or not.'' This section is based on the assumption that the principal in the bail bond is lawfully in custody and has no application where there is ''an absolute want of power'' in the officer who arrested the principal in the bail bond to so do and who exacted the bond before he would release the principal therein from custody. Smith v. State, 86 Miss. 315, 38 So. 319; Boykin v. West, 183 Miss. 567, 573, 184 So. 624. It would be anomaly for a statute to provide that such a bail bond is valid.

The judgment of the court below will be reversed; the judgment nisi will be set aside, and this proceeding on Martin's bail bond will be dismissed.

So ordered.

### DISSENTING OPINION.

**Ethridge, J.**, delivered a dissenting opinion.

I think the majority opinion in this case is erroneous, and harmful to the public peace and security. In my opinion it restricts, by construction, both the purposes of the Constitution and statutes bearing on the public peace, and the duties and powers of conservators of the peace. Section 167 of the state Constitution makes all civil officers conservators of the peace, and provides that they shall be vested by law with ample powers, as such.

The majority opinion recognizes that civil officers are conservators of the peace by virtue of the above provision; but seems to hold that a conservator of the peace had no power, as such, to take affidavits and issue warrants for the arrest of offenders, limiting their power to make arrests to offenses committed in their presence. I think this is too narrow a construction of the powers of conservators of the peace at the common law. But in view of the statute enacted by the legislature, carrying out the directions of the Constitution to vest conservators of the peace, as such, with ample powers, it is not here particularly important whether the conservators had the

power at common law to issue a warrant or to take an affidavit.

By section 1320 of the Code of 1930 it is provided that the Judges of the Supreme Court, Circuit and Chancery Courts, and conservators of the peace throughout the state, "And each judge of the county court and every justice of the peace is such within his county. Any conservator of the peace has power to take all manner of bonds and recognizances from persons charged on affidavit with crimes and offenses, for their appearance in the circuit court to answer thereto, as well as for crimes and offenses committed in their presence; and if any person fail to give bond or enter into recognizance, with the sureties prescribed, when required to do so by a conservator of the peace, he shall be committed to the county jail, there to remain until he comply or be otherwise discharged by due course of law. Every bond or recognizance so taken shall be returned to the circuit court before its next term; and if any person so bound fail to appear in the circuit court, his bond or recognizance shall be adjudged forfeited, and otherwise proceeded with as provided by law."

It will be noted from a careful reading of this section that any conservator of the peace has the power therein named "to take all manner of bonds and recognizances from persons charged on affidavit with crimes and offenses," etc.

Section 1321 of the Code provides that, "Any conservator of the peace may, by warrant issued under his hand, cause any person charged on affidavit with having committed, or with being suspected of, any offense against the law, to be arrested and brought before him, or before some other conservator of the peace in the proper county; and, on examination, the conservator of the peace shall commit the offender to jail if the offense be not bailable, and if it be bailable and the offender fail to find bail."

The terms of these statutes apply to any conservator of the peace. They are not limited in their terms to

judges or justices of the peace, but apply to all officers who are acting as such conservators of the peace in the matter, and fully authorizes the circuit clerk to act as he did in the instant case. There can be no doubt of the circuit clerk's power to take affidavits. Code 1930, sec. 745. He is given this general power; and consequently the statutes cited come into full force, and he is authorized to act in the premises in the public interest.

Section 2964 of the Code provides that the style of all processes shall be, ''The state of Mississippi,'' and that ''it shall not be necessary that any process bear teste in the name of any judge or of any term of the court, but all process, except where otherwise provided, shall be issued and signed by the clerk of the court, with the seal of his office affixed, and shall bear date of the day on which the same shall be issued.''

The offense charged in the affidavit in the present case was one of which the circuit court had jurisdiction; and the clerk of that court having issued the warrant, this section comes into full play in the present case.

Section 1322 of the Code provides that; ''The conservator of the peace may require the prosecutor and witnesses appearing before him, in any case of examination for felony or other crime, to enter into bond or recognizance, in such sum as he may deem proper, with or without security, as he may think the interest of justice to demand, for their appearance to prosecute or give evidence touching the offense, before him on further examination or in the circuit court; and, in default of such bond or recognizance, he may commit the defaulter to jail until he give bail or be otherwise discharged by due course of law.''

Section 1323 of the Code provides that, ''a conservator of the peace, in all examinations had before him for offenses, may issue a subpœna to any county, and compel obedience thereto.''

Section 1324 of the Code provides that; ''If, on the examination into the case of any person brought before

a conservator of the peace other than a justice of the peace, on a charge of felony, it shall clearly appear that a felony has not been committed, but that the accused is guilty of a misdemeanor of which a justice of the peace has jurisdiction, the conservator of the peace shall require the accused to be carried before the proper justice of the peace for trial; and if the conservator of the peace in such case be a justice of the peace, having territorial jurisdiction of the offense he shall convict the offender and punish him accordingly; but such conviction shall not bar a subsequent prosecution for felony in the same matter.''

Other sections deal with the matter of insane persons charged with crime, and a hearing before a conservator of the peace, etc. These sections, it would appear, confer ample authority upon any civil officer for the issuance of a warrant to have the party charged with violation of the law brought before him, or before some other conservator of the peace, for examination. The statute directs that if, on such examination, it appears that a misdemeanor, and not a felony, has been committed, the accused shall be turned over to the proper justice of the peace, having jurisdiction of the offense, for trial.

Section 1246 of the Code provides; ''All bonds, recognizances, or acknowledgments of indebtedness, conditioned for the appearance of any party before any court or officer, in any state case or criminal proceeding, which shall have the effect to free such party from jail or legal custody of any sort, shall be valid and bind the party and his sureties, according to the condition of such bond, recognizance, or acknowledgment, whether it was taken by the proper officer or under circumstances authorized by law or not, or whether the officer's return identify it or not.''

This section certainly has the effect of making the bond valid, subject to forfeiture through non-appearance of the party; and the proceeding in the present case, appealed from the circuit court, should be affirmed.

It was intended by the Constitution of the state to give the people the benefit of government, and to make it operative, regardless of legislative failure to enact appropriate laws to that end. Section 167 of the Constitution was designed to impose upon every civil officer the duty of arresting violators of the law, and binding them over for trial by the appropriate officer or tribunal. It was intended to be self-executing, at least to the extent of the power of that officer at the common law. But it is plainly intended to have the legislature to broaden those powers, to the end that they may be sufficient to conserve the public peace. The public peace is a matter of vital concern not only to the government, but to every citizen living under the government, and subject to its powers and jurisdiction.

The Constitution created a system of courts, and many other constitutional officers, and these may function without legislative action, to the extent of powers of the officers at the common law. In 22 R. C. L., under the title "Public Officers," page 461, section 123, it is said: "The constitution and laws of the state provide in more or less detail the duties of the various state officers, and while as a rule the legislature has the power to prescribe the respective duties of the various classes of county, township and municipal officers, a city council likewise may have power to impose on its officers duties additional to those imposed by the general statutes of the state. The common law may also be the basis of the duties of public officers. Thus, where a statute creates an office previously known to the common law, reference must be had to that law for the purpose of ascertaining the officer's duties and the manner in which they are to be performed, in the absence of legislation establishing another rule. Sometimes if there is no statute defining the duties of an office, usage and custom may be the basis of ascertaining their scope. Furthermore, the duties of an office include all those which fairly lie within its scope and all those

which are essential to the accomplishment of its main purpose which, although incidental and collateral, are germane to or serve to promote or benefit the accomplishment of the principal purposes. Official duties necessarily vary widely in different states and in regard to particular officers.''

In Kirksey v. Bates, 7 Port., Ala., 529, 31 Am. Dec. 722, it was held. by the Alabama Supreme Court that where a statute creates an office previously known to the common law, reference must be had to that law for the purpose of ascertaining the officer's duties and the manner in which they are to be performed, in the absence of legislation establishing another rule. In that case it was held that a notary public, created by statute, had the powers that officer possessed at common law to an extent not controlled by the statute.

On page 531 of 7 Port., on page 723 of the report of this case in 31 Am. Dec., it was said: ''A notary public is an officer long known to the civil law, and designated as 'registrarius,' 'actuarius,' or 'scrivarius.' Anciently, he was a scribe, who only took notes or minutes, and made short drafts of writings and instruments, both public and private. At this day, in most countries, a notary public is one who publicly attests deeds or writings, to make them authentic in another country; but principally in business relating to merchants. In England, several statutes have at different periods been enacted, regulating the appointment of that officer, and to some extent defining his duties—(41 Geo. III, chap. 79; 3 and 4 W. 4 chap. 70.) But none of these statutes prescribe the particular seal to be employed by a notary, so far as we have been able to ascertain their terms.

''A notary public, it has been said, is an officer known to the law of nations;—hence his official acts receive credence, not only in his own country, but in all others in which they are used as instruments of evidence. He is certainly recognized by the law merchant, and his acts, to some extent, are indispensable to its efficacy.''

Again on page 532 of 7 Port., on page 724 of 31 Am. Dec., it is said: "When a statute creates an office previously known to the common law, for the purpose of ascertaining the duties of the officer, and the manner in which they are to be exercised, reference must be had to that law in the absence of legislation. Let it be supposed, then, that the legislature had merely provided for the appointment and qualification of notaries public, without attempting to define their powers, or to declare how their acts were to be authenticated, and it cannot be doubted that notarial acts, would have been required to be done, according to the forms used at the common law."

In Tuscan v. Smith, 130 Me. 36, 153 A. 289, 73 A. L. R. 1344, it is said in the syllabus: "The obligations of public officers as trustees for the public are established as a part of the common law, fixed by the habits and customs of the people." Citing 22 R. C. L. 461, supra.

It is clear, then, I think, that civil officers are constitutional officers, vested with whatever powers such officers had at the common law. At the common law they certainly had the power to arrest for a felony not committed in their presence, on information amounting to probable cause. They were ancient officers at the common law.

Sir William Blackstone, in his Commentaries, book 1, pages 350, 351, discussed these officers, saying: "The king's magesty is, by his office and dignity royal, the principal conservator of the peace within all his dominions; and may give authority to any other to see the peace kept, and to punish such as break it; hence, it is usually called the king's peace." It will be noted from this quotation that the conservators had the duty to keep the peace, and to punish such as broke it. Certain officers were named in the pages referred to, who had the power of conservators of the peace as incident to their offices. Continuing, he says: "Those that were, without any office, simply and merely conservators of the peace, either

claimed that power by prescription; (b) or were bound to exercise it by the tenure of their lands; (c) or lastly, were chosen by the freeholders in full county court before the sheriff; the writ for their election directing them to be chosen 'de probioribus et potentioribus comitatus sui in custodes pacis' (from the most upright and powerful of their county as keepers of the peace)."

It then referred to the creation of justices of the peace in the reign of Edward III. Our ancestors took Blackstone as a great source of the common law, and it will be seen that conservators of the peace had power to try and punish, at the common law.

Our state, through its Constitution, has recognized the office of conservator of the peace each time; and certain officers were made conservators of the peace by constitutional provision. Many others were vested with such powers by statute. All judges, courts and members of the board of police (now supervisors) were made conservators of the peace by the Constitution, while justices of the peace, constables and sheriffs were made such by statutes in Hutchinson's Code. By that Code, pages 444 and 445, it was provided with reference to sheriffs that, "It shall be the duty of every sheriff to keep the peace within his county, by causing all offenders against the law, in his view, to enter into recognizances, with sureties, for keeping the peace, and appearing at the next circuit court to be holden in the same county, and to commit in case of refusal; which recognizances shall, by the said sheriff, be returned and certified before the said court. It shall also be his duty to quell and suppress all affrays, riots, routs and unlawful assemblies, for which end he shall be, and is hereby empowered to call to his aid the power of the county."

Different officers at different times were made conservators of the peace by the Constitution of the state; but the Constitution of 1869, article 6, section 22, provided that, "Judges of all the courts of this state, and all other

civil officers, shall, by virtue of their office, be conservators of the peace, and shall be, by law, vested with ample powers in that respect.''

The judges of all the courts, of course, were civil officers, and it was not necessary to bring forward, in terms, this provision of the Constitution. By the Constitution adopted by the Constitutional Convention of 1890, it was provided that, ''All civil officers shall be conservators of the peace, and shall be by law vested with ample power as such.'' Additional officers were made conservators of the peace by the Code of 1871; and these included the sheriff, for his county; registrars, with regard to registration; inspectors of elections; judges of circuit courts; all members of the boards of supervisors, all justices of the peace. These are sections 235, 354, 367, 532, 1359, 2821. An enumeration of these particular codes and constitutions, without setting forth their provisions at large here, will show that it has been the public policy throughout the history of the state to have conservators of the peace, and to give them adequate powers to preserve the public peace and arrest violators of the law and have them brought to trial. These provisions are for the benefit of all the people, and should not be restricted by construction to a narrower class of officers than the language of the statutes, reasonably construed, makes clear.

In considering the questions incident to the above statutes, it is provided by statute that large numbers of officers and persons may arrest, and their duties in case of arrest are prescribed. By section 1224 of the Code of 1930, the arrest may be made for crime and offenses by the sheriff and his deputies, or by any constable or conservator of the peace within his county; or by any marshal or policeman of a city, town or village within the same; and that private persons may also make arrests. Section 1225 makes it the duty of every person when commanded to do so by an officer seeking to arrest an offender, to aid and assist in making the arrest; and he must obey the command of the officer in the matter.

By section 1226 of the Code, an arrest for a criminal offense, and to prevent a breach of the peace, or the commission of a crime, may be made at any time or place.

Section 1227 of the Code provides for arrest without warrant by an officer or private person, for an indictable offense committed, or for breach of the peace threatened or attempted in his presence; or for a felony, although not committed in his presence; or for a felony which he has reasonable ground to suspect and believe the person proposed to be arrested had committed; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. "And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit."

Other sections following these make further provisions; and in section 1230 it is said; "Every person making an arrest shall take the offender before the proper officer without unnecessary delay for examination of his case."

By reference to the statute on the subject of the sheriff and his powers, it will be seen from all the codes that this officer was given quite comprehensive powers to arrest and imprison for offenses committed in his county. Running through all these statutes is the spirit and purpose of the common law, and statutes to charge officers of every kind with duties, and to give them sufficient powers to discharge their duties efficiently, to the end that every person may enjoy the protection of the law.