Smith *v.* State.

No. 41889 April 10, 1961 128 So. 2d 857

*Earle L. Wingo,* Hattiesburg, for appellant.

*G. Garland Lyell, Jr.*, Asst. Atty. Gen., Jackson, for appellee.

RODGERS, J.

Berry Smith, Jr., was indicted and convicted of having in his possession burglary tools, and sentenced to serve a term of five years in the state penitentiary. From the conviction and sentence in the Circuit Court of Forrest County, the appellant has appealed to this Court.

The conviction in this case rests largely upon the testimony of Bob Walker, the sheriff, who testified that he was driving his automobile between 8:30 and 9:00 o'clock at night, at Palmer's Crossing, or near the airport gate, in the City of Hattiesburg, Mississippi. He was driving about 15 miles per hour when he met a Chevrolet Impala automobile traveling at a very slow rate of speed. The sheriff passed the Chevrolet, turned around and came

up behind it. The driver of the Chevrolet motioned to the sheriff to come up beside his car. The sheriff pulled up beside the stopped Chevrolet and rolled his window down. When the driver of the Chevrolet saw the sheriff he drove away rapidly. The sheriff testified that he sounded his siren and immediately pursued the Chevrolet. And after he had pursued him for 10 seconds he noticed that the Chevrolet was exceeding the speed limit. The sheriff followed the Chevrolet through traffic and over the streets of Hattiesburg and passed stop signs at an unlawful rate of speed. He used his radio to call a patrolman to his aid. The sheriff and the patrolman finally stopped the driver of the Chevrolet and the patrolman arrested him. The defendant and two companions were carried to jail, and thereafter the officers returned to the Chevrolet and searched it. The officers found certain tools, a gas mask, and money situated at various places in the defendant's Chevrolet automobile. The tools discovered by the search of defendant's automobile are the evidence on which the indictment, conviction and sentence are based.

The evidence discloses that at the time the officer began the pursuit of the defendant Berry Smith, Jr., the sheriff had no reason to believe the defendant had committed a crime, and the sheriff did not have a warrant for the arrest of the defendant. The defendant saw the sheriff and fled - "took off in a cloud of smoke". The sheriff saw the defendant flee, blew his siren, and instantly began pursuit. The proverb: "The wicked flee when no man pursueth", was not true on this occasion, at least insofar as the sheriff was concerned, because the sheriff "pursueth".

The question to be determined in this case is: Was the search of defendant's automobile a lawful search? If the evidence on which the conviction was based was illegally obtained, then the motion of the attorney for the defendant should have been sustained, the evidence excluded

from the consideration of the jury, and the defendant released. What right, if any, did the officer have to search the possessions of the defendant? It will be remembered that Section 23, Mississippi Constitution 1890, guarantees that "The people shall be secure in their persons, houses, and possessions, from unreasonable search, * * * ."

██ ██ Public necessity, public policy and the police power for state law permits the officer to make a search of certain movable property upon "probable cause" without a warrant. Patenotte v. U. S., 266 F. 2d (Miss.), 647; 27 A. L. R. 733; 39 A. L. R. 829; 74 A. L. R. 1400. The Legislature of Mississippi has enacted laws permitting the search of certain vehicles for contraband. See Sections 2615 and 5856, Code 1942 Rec. Our Court, however, has been very careful to point out that an officer does not have the right to make a search of an individual's possessions because he "suspects" that the possessions contain contraband. Canteberry v. State, 142 Miss. 462, 107 So. 672.

██ ██ The search of a prisoner, as a part of and incident to an arrest, is in a different legal category from the constitutional prohibition against a search for contraband and evidence, with a search warrant. The search must nevertheless be a "reasonable search" and the arrest must be on "probable cause", or with a warrant. Patenotte v. U. S., supra. It is the common law duty of the officer after having legally arrested a defendant to search his person, and the surroundings of the prisoner. 4 Am. Jur., Arrest, Sec. 68 p. 47; Harris v. State, 216 Miss. 895, 63 So. 2d 396; Keel v. State, 176 Miss. 867, 169 So. 653. ██ ██ But an arrest may not be used as a pretext to search for evidence. McKnight v. U. S., 183 F. 2d 977; U. S. v. Chodak, 68 F. Supp. 455. Unlike the search made under a search warrant, which describes the property to be searched, the search, as an incident to an arrest, is a limited search. It extends only to the "im-

mediate presence'' of the prisoner, the possessions in his ''immediate control'' and in his ''immediate surroundings''. Drayton v. U. S., 205 F. 2d 35; 47 Am. Jur., Search & Seizures, Sec. 19 p. 515. The purpose of the search is to take charge of weapons, evidence of crime, and tools that may be used as a means of escape. Tolliver v. State, 133 Miss. 789, 98 So. 342; 4 Am. Jur., Arrest, Section 68, p. 47; Bird v. State, 154 Miss. 493, 122 So. 539; Cody v. State, 167 Miss. 150, 148 So. 627.

Our Court has pointed out that our statutes in Mississippi authorizing arrest without a warrant, are declaratory of the common law, and under the common law there must be ''probable cause'' for arrest. Craft v. State, 202 Miss. 43, 30 So. 2d 414; Martin v. State, 190 Miss. 32, 199 So. 98. The legislature of this state has divided the officer's duty to make an arrest into two categories: Misdemeanors and felonies. Miss. Code 1942, Section 2470.

 The evidence in this case discloses that the officer had no reason to believe that the person driving the Chevrolet Impala had committed a felony when he drove up beside the defendant, therefore the sheriff had no duty to make an arrest of the defendant unless it was sufficiently evident to the sheriff at this time that the driver of the Chevrolet was committing a crime in his presence, or there was some ''breach of the peace threatened or attempted in his presence''. See Section 2470, Miss. Code 1942 Rec. The evidence discloses that the defendant was going above 60 miles per hour, about 10 seconds after the officer had begun his pursuit, and that during the chase the defendant ran across street intersections when the traffic lights were red, and travelled at an unreasonable rate of speed on the crowded streets. This Court has held, however, that the search begins when the pursuit begins. Ford v. City of Jackson, 153 Miss. 616, 121 So. 278. And an arrest begins when an officer begins his pursuit for the purpose of making an

arrest. If an officer does not have the authority to make an arrest at the instant he begins his pursuit for the purpose of making the arrest, the fact that the person the officer is pursuing violates the traffic law in making his escape does not thereby authorize the arrest that began unlawfully, ██ █ because an officer who attempts an unlawful arrest cannot later arrest a citizen for resisting such trespass. Gause v. State, 203 Miss. 377, 34 So. 2d 729; Contee v. U. S., 215 Fed. 2d 324; Graham v. State, (Fla.), 60 So. 2d 186; 4 Am. Jur., Arrest, Sec. 121, p. 76.

In the case of Butler v. State, 135 Miss. 885, 101 So. 193, an officer saw a colored boy walking down the street. While following along behind the boy, the officer commanded him to stop. The boy began to run, and the officer fired his gun, causing the boy to drop a bag; however, the boy increased his speed and escaped. The officer searched the bag and found it to contain intoxicating liquor. This Court on appeal held that the officer did not have probable cause to arrest the boy, since he did not know the boy was committing a crime in his presence, and the search of the bag was therefore illegal.

In the case of Harris v. State, 209 Miss. 183, 46 So. 2d 194, the officers learned that a negro would arrive on the train with a suitcase containing intoxicating liquor. The officers went to the depot, and when the negro saw the officers, he left the suitcase on the train steps, and fled. The officer picked up the suitcase and arrested the defendant, and later opened the suitcase to find it contained intoxicating liquor. The Court held that the arrest and search were illegal since the officer did not have sufficient probable cause to know that a crime was being committed in his presence. See Castillow v. State, 473, 135 So. 205; Jones v. State, 216 Miss. 263, 62 So. 2d 334; Feazell v. State, 217 Miss. 879, 65 So. 2d 267.

██ █ Our Court has made it very clear in the case of Lewis v. State, 198 Miss. 767, 23 So. 2d 401, that, where a sheriff has no warrant for arrest of a defendant and

the defendant had not committed any crime in the sheriff's presence, the arrest of the defendant was illegal, and evidence obtained by a search of her person as an incident to the arrest was inadmissible. See also Pettis v. Sate, 209 Miss. 726, 48 So. 2d 355. A search in violation of the rule of "probable cause for arrest" is a violation of a citizen's fundamental rights. Myers v. State, 158 Miss. 554, 130 So. 740.

In the case at bar, there was no evidence that the defendant was committing a crime, or was attempting to breach the peace, when the sheriff began his pursuit. The sheriff had no duty nor right to arrest the defendant at that time; therefore the search made of the defendant's automobile was an incident to an illegal arrest, and was an unlawful search.

We feel that we should again call attention to the holding of this Court with reference to the duties of the officers in the cases of D'Aquilla v. Anderson, 153 Miss. 549, 120 So. 434; Parkinson v. State, 145 Miss. 237, 110 So. 513. An officer enforcing the law, should follow the law, and if officers undertaking to enforce the law would conform to the rulings of this Court, better results, less delay, and a great saving of expense would result.

The objection to the evidence obtained by the search of defendant's automobile, and the motion for a directed verdict should have been sustained.

The case will be reversed, and the defendant discharged.

Reversed and rendered.

*McGehee, C.J.,* and *Lee, Kyle, Arrington,* and *Ethridge, JJ.,* concur.

GILLESPIE, J. Dissenting:

The nine items found in appellant's automobile were burglar's tools. The question is whether they were found by the officers as a result of an unreasonable and illegal

search. If the arrest was legal, the search was legal. If appellant committed an offense in the presence of the sheriff, he had a legal right to pursue and arrest appellant and search his automobile. Appellant was arrested for reckless driving and speeding. The narrow point is whether, after appellant motioned the sheriff to drive up beside him, appellant was guilty of reckless driving when he took off in his automobile ''in a cloud of smoke,'' and was exceeding the speed limit in seconds after he started.

I do not find it necessary to comment on the cases cited by the majority since, in my opinion, the principles announced therein do not apply here. The sheriff testified that he was summoned to drive up beside appellant's automobile, and that when he did so and rolled his window down appellant took off ''in a cloud of smoke.''

The sheriff testified on direct examination as follows:

''Q. Let's see now, Bob. You say you pulled up behind him. Which side did you pull up on?

''A. He was traveling northwest, and I was behind him and I pulled up even with him. He stopped, and I stopped, and I leaned over and rolled the window down, and when he saw me, he took off in a cloud of smoke.

''Q. And what did you do?

''A. I took off after him.

''Q. You took off after him. Now, will you as best you can, trace his route and yours in pursuit?

''A. We went through Palmer's Crossing, across the railroad there. I sounded my siren, and that had no effect, except maybe to accelerate him, and we came out to the By-Pass at the Beverly Theater at probably a hundred miles an hour.

On cross-examination, the Sheriff testified:

''Q. And when was the first time, Mr. Sheriff, that you were able to say that he was exceeding the speed limit?

"A. In a matter of seconds, and incidentally, when he took off, I sounded my siren. He knew that I wasn't a robber.

"Q. I know that, but I just want to know when can you say that you first noticed that he was exceeding the speed limit? You were following —

"A. Yes, sir. Yes, sir, I would say that it was in ten seconds after we started he was doing better than sixty.

"Q. You had pursued him a period of about ten seconds when you noticed that he was exceeding the speed limit?

"A. Yes, sir."

It is obvious to me that appellant was driving away *before* the sheriff pursued and since appellant was exceeding the speed limit in seconds he undoubtedly started off recklessly. I do not think the sheriff had to wait until appellant made a clean get away before pursuing him, and I am of the opinion that the lower court was fully justified in finding that appellant started off recklessly in the presence of the sheriff, and that his pursuit, arrest and search were legal. This was not a case where the sheriff initiated the flight of the person arrested, as was true in some of the cases cited by the majority.

While I am not here suggesting that this Court abandon the exclusionary rule of evidence in regard to searches and seizures, I believe it will be useful in placing the present case in proper perspective to call attention to the fact that Mississippi is one of a minority of the states adhering to the exclusionary rule. Neither the Constitution of the United States nor the Constitution of Mississippi require the exclusion of evidence secured in an illegal search. The Federal courts and the courts of a minority of the states have adopted the rule excluding evidence which is the product of an unreasonable and illegal search. On the other hand, a majority of the states, including New York and Massachusetts, admit the evidence notwithstanding the fact that it was secured through an illegal search. 20 Am. Jur., Evidence, Sec-

tion 394. In those states not having the exclusionary rule a civil or criminal action may be maintained against the offending officer for illegal search. They reason that public interest requires the admission of evidence which tends to prove the guilt of the accused, and that criminals should not be rewarded by the officer's mistake.

England, whence came our legal system and where individual rights have always been jealously guarded, does not adhere to the exclusionary rule. Dean Wigmore denounces the rule as "misplaced sentimentality." 8 Wigmore, Evidence, 2184 (3rd Ed.).

As already stated, I am not here contending that we should abandon the exclusionary rule but I am contending for a common sense application of the Constitution in regard to searches and seizures. When a court adopts the exclusionary rule, the Constitution does not require, and the best interests of society do not permit, technical and legalistic construction as to what is an unreasonable and illegal search. In deference to the majority, I hasten to add that they do not intend a technical or legalistic application but believe that our prior decisions require the results here reached.

I also concede that the matter here under consideration is one about which reasonable minds might differ. In order to protect the innocent from unreasonable searches and seizures, it is often necessary to also protect the guilty. But a combination of the exclusionary rule with the too-liberal construction of what is an illegal search merely provides a refuge for criminals. I am not unmindful of the historical basis for the Constitutional prohibition against unreasonable searches and seizures and these safeguards to individual liberty should be jealously protected by the courts; but I am concerned with the fact that all too often those who receive the constitutional protection are not those who are intended to be protected. In the present case it is my opinion that

our authorities do not require the finding that the search in this case was illegal.

I would admit the evidence and affirm the case. I do not condemn the sheriff but would commend him for risking his life in the line of duty.

*McElroy* and *Jones, JJ.,* join in this dissent.

RODGER, J., Separate Opinion:

I wrote the opinion for the majority of the Court in this case, but in view of the dissenting opinion, I want to point out, not as a part of the majority opinion but my personal opinion, that there is another reason why the testimony of the search of the automobile was unlawful. If by any chance and by a stretch of the imagination the arrest of the defendant was lawful and it was the duty of the officer to search the possessions of the defendant as a part of, and as an incident to, the arrest, that right and duty subsided and disappeared when the officers locked the automobile without searching it, and took the defendant away from the scene of the arrest and to jail, where he was safely incarcerated. The officers could not then return to the scene of the arrest and search the automobile without a search warrant, because the arrest had been completed, the defendant was in jail, and a search of his possessions could not then be an incident to an arrest. Millette v. State, 167 Miss. 172, 148 So. 788; Lancaster v. State, 188 Miss. 374, 195 So. 320; Page v. State, 208 Miss. 347, 44 So. 2d 459; Martin v. State, 217 Miss. 506, 64 So. 2d 629.

I realize that this point was not raised in the lower court, but this Court said in Brooks v. State, 209 Miss. 150, 46 So. 2d 94. "Errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal." I would also point out that fundamental rights are not mere court procedures, but, as was said in the Brooks case, supra, "Constitutional rights * * * rise above mere

rules of procedure''. Fundamental rights are inalienable rights that existed before the Constitution was written, and with which men have been endowed from the beginning of time. The touchstone of freedom is the right to live unmolested, and, as we say colloquially, ''the right to be let alone''.