## LASTER *v.* CHANEY *et al.*

(Division B. Dec. 13, 1937.)

[177 So. 524. No. 32932.]

Percy Bell, of Greenville, for appellant.

Ernest Kellner, of Greenville, for appellees.

114

Argued orally by **Percy Bell**, for appellant, and by **Ernest Kellner**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

At the time of the injuries at issue in this case, appellant, a young white man then 22 years of age, was employed in the government engineering department at Vicksburg, and appellees were the sheriff of Washington county, his deputy, and the surety on the bond of the sheriff. On the afternoon of Saturday, October 10, 1936, appellant left Vicksburg for Greenville, traveling alone by automobile. At a point near Longwood, in Washington county, appellant stopped at the home of a

young lady with whom he had an engagement, and, after driving around for a while, they went out on the levee near Chatham to see certain friends on a government dredge boat, which was thought to be stationed at that point. They failed to locate the dredge boat, and about 6:30 or 7 o'clock returned to the young lady's home, and soon thereafter appellant departed northward on his way to Greenville, where he was to visit other friends.

It seems that, while appellant and his companion were on the levee looking for the dredge boat, they left appellant's car parked in or near a pasture. Theretofore several head of cattle had been missing from pastures in that immediate vicinity. A local resident noticing appellant's car parked as aforesaid became suspicious, and went near enough to the car to ascertain its make and license number, and reported this information to a man named Stone, who was the manager of the plantation, which included the pasture near which the appellant's car had been parked, or in which it had turned around when coming back from the levee. Stone thereupon armed himself, and, accompanied by another man, located himself upon the Greenville highway to watch for the car of the make and license number so reported.

When appellant came along on his final way to Greenville, Stone telephoned the sheriff requesting the latter to arrest and detain the occupant of appellant's car, giving the make and license number, stating to the sheriff that information as to the reason for the arrest and detention would be given later, and that he, Stone, was following the car. Stone and his companion did follow and passed appellant, and, after having passed, Stone stopped and placed his car in such position as to partially block the highway, and then got out and waved to appellant with a signal to stop. Appellant thinking it was a holdup, sped around and by Stone's car, whereupon Stone fired two shots, one of which passed through the windshield of appellant's car. Appellant thereupon immediately came to a stop, got out of his car with his

hands up, as he was ordered to do, and Stone informed him that he was being stopped for cattle thievery; but after a thorough search of the car and of the person of appellant by Stone, and when appellant disclosed to Stone, by exhibition of papers and oral information, who he was, what his object had been in visiting the levee, and other pertinent facts, Stone allowed him to proceed, but informed him that he would be stopped by the sheriff, who had been requested to do so by telephone. This was about 7:30 o'clock.

When appellant reached a point near Greenville, he was stopped by appellees, the sheriff and his deputy, whereupon appellant gave to the sheriff the same full information which he had given Stone, and the sheriff was also informed of the circumstances of Stone's having stopped appellant and that upon like information Stone had released him. The sheriff, noticing the hole of the shot in the windshield, stated that he would have to place appellant in jail until Stone could be seen. Appellant was thereupon placed in jail by the deputy, where he was kept until nearly 10 o'clock. Appellant filed suit jointly against the aforesaid appellees and against Stone. The jury returned a verdict of $2,000 against Stone, but, as to the other defendants, appellees here, the verdict was in their favor, and from the verdict and judgment as to the defendants, other than Stone, this appeal is prosecuted.

The officer making an arrest, without warrant, on suspicion of felony, may act upon information furnished him by a credible person, known to him as such, and this may be done by telephone; but this information must at least be sufficient in its factual statement to justify the officer in believing that a felony has been committed and that there is good factual reason to definitely suspect that the party arrested, or to be arrested, is the felon. Here no factual statement whatever was made to the officer, as both he and his informant admit. All that was communicated to the officer was a request to arrest ap-

pellant, with the sole additional statement that the reasons therefor would be furnished to the officer later. To make an arrest at the request of a third person, however credible that person may be thought to be, without any factual reason therefor given, would open wide the door to tyrannical personal and official oppression, and can find no support in any legal authority in this country.

Nor was the arrest justified by what appellee officers saw and heard after the appellant was stopped by them and it was found that a shot had passed through the windshield. In the first place, they had no legal basis of right to stop the appellant at all, and, in the second place, what they then saw and learned furnished no ground for more than a suspicion of a possibility, and an extremely remote possibility at that; for the appellant was unarmed and gave full explanation of the cause of the shot, as to which appellant was absolutely innocent, and full information as to his residence, employment, and purposes, and the officers had nothing whatever before them to the contrary. When using herein the expression ''good factual reason to definitely suspect,'' we mean a good factual reason to definitely suspect as a tenable probability, not a mere possibility. If an attenuated possibility were accepted as a sustainable reason for an arrest, then few men could move beyond the environs of their own residences without being in constant danger of being seized and thrown into prison.

Appellant was entitled to the peremptory instruction requested by him upon the issue of liability, and he is entitled also to an instruction, carefully and properly drawn, upon the issue of punitive damages.

When a person has been chosen to the high position of sheriff and has assumed the duties thereof which in actual execution so largely deal with the liberties of the people, it will be naturally supposed that he has taken some pains to acquaint himself with the power and authority conferred upon him by law in relation to arrests,

and with the limitations thereon as laid down by the law. And when an arrest has been made by him and his deputy, and an imprisonment imposed, and the facts admitted by him show no legal grounds whatever therefor, as is the case here, the jury should be permitted to say whether the conduct of the officers has been characterized by such gross wrong as to evince a wanton or willful disregard of the rights of others, and, if so, to administer a corrective by way of smart money.

In what has just been said, we lay down no formula for a punitive damage instruction, nor are we at all unmindful of the great difficulties under which law enforcement officers labor under modern conditions. They are not to be deterred or discouraged in the diligent and fearless discharge of their duties by harsh and unwarranted penalties, or by any penalty at all, as such, when they make some reasonably excusable mistake; nevertheless, they should at the same time be made to know that the liberty of the unoffending citizen stands above everything else under our constitutional system, and that official oppression, in whatever form it may appear, shall not be a matter to be lightly regarded.

As we have already stated, we do not understand that this appeal involves the judgment against Stone, but, if so, it is affirmed, and, as to the other defendants in the trial court, the judgment is reversed, and the case remanded.

Reversed and remanded.