## NICHOLS v. STATE.

(In Banc.   Dec. 10, 1945.)

[24 So. (2d) 14.   No. 35980.]

**W. I. Munn,** of Newton, for appellant.

Greek L. Rice, Attorney General, by R. O. Arrington, Assistant Attorney General, for appellee.

Griffith, J., delivered the opinion of the Court.

Appellant was indicted for assault and battery with intent to kill and murder, and was convicted of assault and battery.

The scene of the difficulty and what preceded it are not in dispute. Three negroes were shooting dice in a vacant house belonging to Fanning, the prosecuting witness.

The latter, with his tenant, both white men, were approaching the house when the negroes, seeing them, ran to the cover of the woods nearby. When Fanning, the prosecuring witness, got on the porch he called to the negroes to come to him. Two of them, including the defendant, came in response, but the third did not.

Near the edge of the porch there were some pieces, or cut-off remnants, of plank. The two negroes when they came to the house in response to the call of Fanning, were at or near these pieces of plank. From and after this point, up to which there is no material dispute, we will disregard entirely the version of the defendant and the other negro and look solely to the testimony of the prosecuting witness and of his tenant, McDonald, who was with him, these two being the only state witnesses.

Fanning's testimony is that when defendant had reached a point about six or eight feet of the porch and while Fanning was standing on the porch, the latter asked the defendant about the third negro, and according to Fanning the following occurred, quoting from the record: "I says 'Tommy why didn't you bring that other boy with you?' He says 'I don't know him', I says 'Tommy don't tell me a damned lie that you don't know that negro.' He says 'You are a God damned liar, I don't know that negro.' Well, that made me mad. I stepped off the porch and when I did he hit me. There were some short pieces of plank there pretty close and I made for a plank and picked up a piece of one by four about four feet long and Tommie got a piece of one by five about five or five and a half feet long." On cross-examination the prosecuting witness said that when he stepped off the porch he went in the direction of the defendant, and there is here the following questions and answers:

"Q. What were you trying to get when you stepped off? A. I was going towards where those cut-offs were.

"Q. You were going after this stick? A. I was trying to get anything I could get hold of. . . .

"Q. Do you mean to tell the jury when you got off that porch you meant to hit this negro with something? A. Yes sir."

The testimony of the white tenant, MacDonald, is in accord with what Fanning says and on the material point involved McDonald said, speaking of Fanning:

"Q. When he got off of that gallery, he went in the direction of this defendant here? A. Yes sir, sure did.

"Q. And he was going after him wasn't he? A. Well of course he was going to where the negro was."

McDonald also said, and it is undisputed by Fanning, that the blow struck by the negro as Fanning came upon him from the porch was a glancing blow by the fist.

Thus by the state's own testimony the prosecuting witness began the altercation by calling the negro a liar, and when the negro retorted in kind the prosecuting witness immediately embarked, still as the aggressor, upon the course of events out of which the battery resulted, and as disclosed by the above-quoted testimony, a result which as to any actions by the negro was in self-defense and was of no more than the natural and probable consequence, one to be expected, had both of the parties been white men or both of them negroes, and we must decline to permit the imposition of any distinction between them when it comes to a matter of legal right or liability; we will not permit it to be held that a white man has the right to respond to and to combat aggression and that an equal right under the same or equivalent circumstances shall be denied to a negro. The prosecuting witness would not have had even a civil cause of action in tort against the negro, and for the stronger reason the state has no cause of criminal action against him, and this as shown on the state's own version and testimony.

There was no request for a peremptory charge and no motion for a new trial, but neither of these is necessary when the state, by its own showing, has failed to make out a case of any offense as charged, as we distinctly held in Cogsdell v. State, 183 Miss. 826, 185 So. 206.

Reversed, and appellant discharged.