CRAFT *v.* STATE.

(Division B.   May 5, 1947.)

[30 So. (2d) 414.   No. 36459.]

Edwards & Edwards, of Mendenhall, and Dixon L. Pyles, of Jackson, for appellant.

**Greek L. Rice**, Attorney General, by **Geo. H. Ethridge**, Assistant Attorney General, for appellee.

**Griffith, P.J.**, delivered the opinion of the court.

The Sheriff of Smith County received reliable information, on Sunday night, August 18, 1946, that a felony had been committed that night at or near the residence of a negro named Albert Craft, Sr., in the southwestern portion of the county, but he had no information as to who was the guilty party or whether one or more. About eight o'clock the next morning, accompanied by seven deputies, he went to the Craft home with the purpose, as the record sufficiently discloses, to arrest all those found there to the end that having taken them into custody, he could better investigate their guilt, if any of them were guilty. He had no warrant for the arrest of any person or persons, and no such warrant had been issued.

When he and some of his deputies had reached a point within less than a quarter of a mile of the Craft residence and in plain view thereof, he and his deputies saw several negroes leave the house in flight therefrom, whereupon

the sheriff and a number of his deputies hastened to the premises, called upon the fleeing negroes to halt, and upon their failure to do so, members of the posse, including the sheriff himself, fired on the negroes, and some of them continued to do so as long as any of the negroes remained within range.

It appears that on the previous night unknown parties had fired a considerable number of shots into the Craft house, and that when the posse appeared within sight on the next morning, the elder Craft, without recognizing who they were, became excited and alarmed and exclaimed that all the negroes in the house should run for their lives; and this they did. One of them was a negro named Cooper who had come there that morning to go to work, and as best can be ascertained from this rather imperfect record, he led the flight, followed immediately by the others including appellant, who is the nineteen-year-old son of Albert Craft, and also Albert Craft, Jr., twelve years old, a brother of appellant.

Cooper was the first to be fired upon by the posse, and when appellant in his flight reached the hog pen, they shot at him, and the twelve-year-old boy was fired upon as he ran through the cotton patch. The sheriff admitted that he himself fired at the boy. There was a thicket immediately beyond the cotton patch, and when appellant reached the thicket, he turned and fired back at the sheriff, when the sheriff in his advance had reached a point about thirty steps into the cotton patch; and it was for this that appellant was convicted and sentenced to the penitentiary.

The facts about the firing upon the fleeing negroes, as briefly outlined above, was established by the testimony of three of the negroes who fled, and by that of the elder Craft who remained at the house, the other negroes not having been introduced; and not only is that testimony wholly undisputed by the State, but is in a measure substantiated by two of the State's witnesses. Wherefore

the facts about that matter, substantially as stated, must be, and they are, accepted as true.

Under our statute, Section 2470, Code 1942, an arrest may be made without warrant and for an offense not committed in the presence of the person making the arrest when a felony has been committed and the person making the arrest "has reasonable ground to suspect and believe the person proposed to be arrested to have committed it." The statute is declaratory of the common law and under it there must be probable cause to believe that (1) a felony· has been committed, and (2) that the person to be arrested is the guilty party. Howell v. Veiner, 179 Miss. 872, 880, 176 So. 731. It is not enough that there is good ground to believe that a felony has been committed, but the ground for the belief must include also as an element essential to the right to arrest that the party to be arrested is the person guilty of the felony. Without the second element the first had as well not exist.

And it is not enough that there was good ground to believe that the person proposed to be arrested was present at the time the felony was committed. This was in effect so held in Cochran v. State, 191 Miss. 273, 276, 2 So. (2d) 822, 823, a case where an arrest was made on direct information that the person arrested was present, and wherein nevertheless the arrest was held to have been unlawful, for the reason that "some degree of participation in the criminal act must be shown in order to establish any criminal liability. Proof that one (was present or) has stood by at the commission of a crime without taking any steps to prevent it does not alone indicate such participation or combination in the wrong done as to show criminal liability, although he approves of the act."

It may be that under modern conditions it would be better in the interest of the public protection and safety at large that arrests without warrant in felony cases should be permitted on suspicion that within the range of reasonable possibility the person to be arrested is the guilty party, eliminating the requirement of belief in the

reasonable probability of his guilt; but such change would have to be made, within constitutional limitations, by the legislature and not by the courts,—so that in the meantime we must maintain the law as it is. Compare Laster v. Chaney, 180 Miss. 110, at page 117, 177 So. 524.

The sheriff distinctly and frankly admitted at three different places in his cross-examination that he had no grounds of belief as to any particular person or persons who was or were the guilty party or parties in the felony alleged to have been theretofore committed, and the most that can be squeezed from this record is that he had grounds to believe that the fleeing negroes had been present, and this, as stated, was not sufficient.

He and his posse had, therefore, no right to arrest the fleeing negroes, no right to attempt to halt them, and emphatically no right to shoot at them or any one of them while they were fleeing, however sincerely, under a mistaken notion of his authority under the law, he may have thought he had a right to do as he and his deputies did. Had any one of the fleeing negroes been killed when being thus shot at, the person who fired the fatal shot would have been guilty of manslaughter.

When, singular or plural, an aggressor is committing a crime against the person, the victim may respond to or combat the aggression with a force of like degree or character and without any accountability on his part to the law for so doing; and this is all that the appellant did here. No other authority is needed for this statement than the recent case, Nichols v. State, 198 Miss. 821, 24 So. (2d) 14. The shooting at his twelve-year-old brother by the sheriff and his posse, admitted by the sheriff, would justify appellant's action, even if they had not been shooting at appellant himself. Under the present record, stripped of its straw, this is all there is to this case; wherefore appellant was entitled to the peremptory charge requested by him.

Reversed, and appellant discharged.