SHEDD *v.* STATE.

(In Banc. February 9, 1948.)

[33 So. (2d) 816. No. 36687.]

Leonard **B. Melvin**, of Laurel, **J. M. Travis**, of Meridian, and **J. A. McFarland**, of Bay Springs, for appellant.

**J. L. Thompson,** of Bay Springs, special counsel for appellant.

**Greek L. Rice,** Attorney General, by **Geo. H. Ethridge,** Assistant Attorney General, for appellee.

Argued orally by **Leonard B. Melvin** and **J. L. Thompson**, for appellant, and by **Geo. H. Ethridge**, for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

In the Circuit Court of the First Judicial District of Jasper County appellant was indicted, tried, and convicted of murder for the slaying of a city policeman of Heidelberg. The jury disagreed as to the punishment, and appellant was sentenced to the penitentiary for the term of his natural life. From such conviction and judgment he appeals here, assigning numerous errors.

At the time of the unfortunate tragedy appellant was married and the father of three children. He had come to Heidelberg about 9 o'clock on the evening of the 18th day of August, 1945, for the purpose of obtaining some groceries, and getting his supper. It was thereafter his intention to visit the hospital at Laurel and bring his wife home, she having recently there presented him with his third child.

When appellant drove into the village of Heidelberg, he purchased some groceries from a store in front of which he parked his car. Apparently having deposited them therein, he started across the street with a small bundle under his arm, entered a cafe, ordered his supper and directed that some meat in the aforesaid bundle be cooked for him as a part thereof. For some undisclosed reason he left the cafe, intending to return for his supper, but, of course, never did, because of the strange and extraordinary events which followed and ultimately culminated in the slaying of the policeman.

There were just outside the cafe, at appellant's entrance and departure, a former mayor of Heidelberg; the city policeman, Joe Doole; and his wife. Without disclosing why he did so, the officer peered into the restaurant once or twice until appellant emerged therefrom. Appellant was then followed across the street by the officer, who had not warrant for his arrest; but when the appellant reached his car, the officer grasped him by the arm, and the two men then had some conversation, not audible to any one else. Since appellant did not testify at his trial, what they said is still unknown, and the State was unable to prove that the policeman informed appellant that he was under arrest, and if so, for what. The Attorney General frankly concedes that if it were for an offense committed in the presence of the officer, it could have been justified solely on the testimony of Mrs. Doole, that, in the cafe, appellant was boisterious, and as he passed her she detected the odor of whiskey. We think this insufficient to justify appellant's arrest on this occasion. However, the evidence in the record overwhelmingly demonstrated that appellant was not drunk, or even apparently under the influence of intoxicants. The State never proved that the officer either had or served any kind of warrant on appellant, or, as stated, why he arrested appellant, or for what. It may be that the officer thought appellant possessed intoxicating liquor in the

small package under his arm, but if so, this was shown to be untrue, and hence did not authorize the arrest.

Nevertheless, the officer and prisoner started to the jail, and after they were out of sight of all those who testified for the State, four or five shots were heard in rapid succession. They hurried in the direction from whence they sounded, and found the officer lying across a wire fence, a few feet in front of the jail, bleeding profusely from several wounds, and the appellant gone. They did not see the shooting, and had no knowledge of what there happened.

However, the wife and her husband were driven to the hospital at Laurel in the car of a friend immediately, which was some time between 9 and 10 o'clock Saturday night, October 18, 1945. In the course of the drive the wife, testifying on behalf of the State, said her husband made a dying declaration as to what occurred. Before permitting this evidence to go to it, the jury was excused and Mrs. Doole was examined as to its admissibility. The court admitted it in evidence before the jury, and his doing so is assigned as one of the numerous errors claimed here. Three of us are of the opinion that the declaration was not admissible under the circumstances, while three of us agree that it was admissible, and its admission was not error. Since it takes four of the justices to sustain an assignment of error that will reverse the judgment of the trial court, this particular assignment of error is overruled.

Mrs. Doole said that her husband declared that ''he arrested Grady Shedd and that he was as humble a prisoner as he had ever arrested until he got to the jail and stooped over to unlock the door, and that Grady Shedd snatched his gun off him and shot him with it.''

Section 2470, Code 1942, provides when an officer or private citizen may arrest without a warrant. An examination of the statute will reveal that none of its provisions justified the arrest of the appellant here by

the deceasd officer, considered with reference to the facts and circumstances. So, as stated, we are of the opinion that the arrest was unlawful, and if the officer had succeeded in locking his prisoner in the jail, the imprisonment would have been unlawful.

It was testified at the trial, without contradiction, that appellant was heard to remonstrate with Officer O'Doole, saying: "What have I done for you to lock me up about? I haven't done anything. I have a newborn baby and I want to go to the hospital and get it and my wife and bring them home." The dying declaration does not contradict this evidence, because the declarant detailed only the action of appellant, not what he may have said at the time.

"Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter." Section 2225, Code of 1942. The facts of this case as reflected by the record before us bring it within the purview of this statute and reduces the homicide from murder to manslaughter.

In the case of Bergman v. State, 160 Miss. 65, 133 So. 208, we held that a killing committed while resisting unlawful arrest, or rescuing a prisoner unlawfully arrested, amounts to manslaughter only; and that evidence there as to killing of an officer who was attempting illegally to make an arrest for a misdemeanor without warrant, justified conviction for manslaughter only. See also Walker v. State, 188 Miss. 177, 189 So. 804.

On the proof in the record of this trial the Court should have refused the State all instructions as to murder and malice aforethought. No malice was shown here. Such facts, as stated, would have sustained only a verdict of manslaughter, and for the error in granting such instructions and the conviction of appellant of murder, the judgment of the lower court is reversed and the cause is remanded for a new trial.

There are other assignments of error, but only one of them seems to merit even brief discussion here. After the homicide, the appellant fled, and the sheriff, with a warrant for his arrest, never found him, although looking and searching for him over a period of approximately two years. Eventually, appellant surrendered. The court, on this evidence, granted the State this instruction: "The Court instructs the jury for the State that flight is a circumstance for which an inference of guilt may be drawn and considered along with all other facts and circumstances connected with the case." This instruction is saved from error because it told the jury that flight could be "considered along with all the other facts and circumstances connected with the case." We so held in Howard v. State, 182 Miss. 27, 181 So. 525.

However, for the reason given, supra, the judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.