BRANNING *v.* STATE.

Oct. 27, 1952

No. 38488          5 Adv. S. 5          60 So. 2d 633

*J. T. McDonald* and *Russell Wright,* for appellant.

*J. T. Patterson,* Assistant Attorney General, for appellee.

ROBERDS, P. J.

Appellant was convicted of the unlawful possession of a narcotic, to-wit, five tablets of morphine, in violation of Sections 6846 and 6855, Miss. Code 1942, and sentenced to serve three years in the state penitentiary.

The only contention made upon this appeal is that his arrest was unlawful and that the evidence of such possession, obtained after arrest, was inadmissible. The question arises under this state of facts:

In June, 1951, the sheriff of Noxubee County, Mississippi, appeared in the City of Columbus, Lowndes County, said state; contacted Mr. Vickers, the chief of police of said city, and told him that a drugstore in Brooksville,

Noxubee County, had been burglarized; that he suspected a man who he then understood was staying at the Gilmer Hotel in Columbus; that the reason he suspected this man was because he had been in the drugstore the day before the night of the burglary. The sheriff did not say whether he knew that of his personal knowledge or had been so informed. He did not know the name of the man but did have, and gave to the chief, a description of him and of his woman companion and the automobile in which they were traveling. The sheriff and chief of police went to the Gilmer Hotel to investigate. They found that appellant, whose name they then learned, and his companion had been at that hotel but had then checked out. The sheriff returned to Noxubee County. The next day the chief and the captain of police, cruising about the city in separate automobiles, but in contact with each other by radio, saw a car traveling one of the main streets of the city of the description given them by the sheriff. The captain of police, being in front of the chief, caused appellant to pull into the curb and stop, as the chief also approached. Both policemen started towards the car occupied by appellant and his companion to arrest appellant, whereupon they saw him take something from his person and place it in the ash tray of his automobile. They arrested appellant without a warrant, took from the ash tray a small box containing the five tablets of morphine. This was the evidence upon which appellant was convicted of the crime involved in this prosecution. He objected to evidence of his possession of the morphine under the circumstances, contending that the chief of police had no reasonable ground to believe that he had committed the burglary of the drugstore at Brooksville. That is the question for our decision.

(Hn 1) Section 2470, Miss. Code 1942, authorizes an officer, or a private person, to arrest another without warrant ''when a felony has been committed `and he has reasonable ground to suspect and believe the person proposed

to be arrested to have committed it.'' The sheriff was a credible person and we may assume, as do appellant and the State, that the drugstore had been burglarized. Whether appellant, or another, did so does not appear. The sheriff did not testify. The question narrows to the query **(Hn 2)** whether the mere fact that appellant had been in the drugstore sometime during the day before the burglary that night constitutes reasonable ground for believing he committed the crime. We do not think so. There may have been fifty or more persons in the store that day. The fact alone and of itself that appellant was one of these, constitutes no reasonable ground for believing he committed the burglary. **(Hn 3)** The principles and holdings in the following cases, although the facts vary, as is always the case, preclude the admissibility of this testimony under the facts of this case. Orick v. State, 140 Miss. 184, 105 So. 465; Mapp v. State, 148 Miss. 739, 114 So. 825, (Retrial 120 So. 170); Smith v. State, 160 Miss. 56, 133 So. 240; Castillo v. State, 160 Miss. 473, 135 So. 205; Laster v. Chaney, 180 Miss. 110, 177 So. 524; McGowan v. State, 184 Miss. 96, 185 So. 826; Craft v. State, 202 Miss. 43, 30 So. 2d 414; Hubbard v. State, 202 Miss. 229, 30 So. 2d 901; Shedd v. State, 203 Miss. 544, 33 So. 2d 816; Acuna v. State, (Miss.) 54 So. 2d 256.

Recitals of the facts and an analysis of the principles involved in the foregoing cases would unduly lengthen this opinion. These will be disclosed by a reading of the cases. Perhaps the pronouncement most directly applicable to the facts of the case is that which appears in the Craft case. After referring to the provisions of said Section 2470 the Court said, ''It is not enough that there was good ground to believe that a felony has been committed, but the ground for the belief must include also as an element essential to the right to arrest that the party to be arrested is the person guilty of the felony. Without the second element the first had as well not exist. And it is not enough that there was good ground

to believe that the person proposed to be arrested was present at the time the felony was committed. This was in effect so held in Cochran v. State, 191 Miss. 273, 276, 2 So. 2d 822, 823, a case where an arrest was made on direct information that the person arrested was present, and wherein nevertheless the arrest was held to have been unlawful for the reason that 'some degree of participation in the criminal act must be shown in order to establish any criminal liability . . . '.'' In the case at bar the most that is shown is that appellant was in the drugstore sometime during the day prior to the commission of the crime the night following.

The State, in support of its contention, that the arrest was lawful, cites three cases—Kennedy v. State, 139 Miss. 579, 104 So. 449; Love v. State, 142 Miss. 602, 107 So. 667; and Wallace v. State, 149 Miss. 639, 115 So. 778. Neither case supports the contention. In the first case Kennedy was convicted of distilling. Simmons, a private citizen, four days before the arrest, went to premises under lease to Kennedy and another and found a still thereon. Three days later Simmons revisited the scene and found the mash fermenting. Simmons reported all of this information to the sheriff, and requested the sheriff to go with him the next day to the still, which the sheriff did. Simmons went forward while the sheriff remained behind. Simmons saw Kennedy and another operating the still. He arrested them, without a warrant, the meantime calling the sheriff, who quickly appeared and handcuffed the operators. Here, it is seen, Kennedy was the lessee of the premises upon which the still was being operated. Simmons saw him in the act of committing the crime before the arrest.

In the second case Mary Love was convicted of being an accessory to the crime of incest. A citizen reported to the chief of police of Clarksdale that a Dr. Blocker was having sexual relations with his stepdaughter in a house operated by Mary Love. A policeman was assigned to

watch the house. This he did from a nearby residence, and, three days before the arrest, he saw Blocker on the back porch of the Love house. Blocker then went into the house and remained thirty minutes. He came out and drove his car down a back street and then came up in front of the house, whereupon the stepdaughter emerged from the house, got into the car and she and Blocker drove away. On the day of the arrest, after the foregoing events, the policeman was told by a neighbor that Blocker and the stepdaughter were then in the Love house together. The policeman saw the Blocker car parked to the rear of the Love house. He had theretofore taken down the tag number. The policeman then broke into the house without a warrant, after calling to the parties without eliciting any response. Blocker and the stepdaughter were nude and in the act of sexual intercourse. This, it is immediately seen, is quite a different case from the one at bar.

In the last case Wallace owned land the timber upon which was owned by another party. That party went upon the land to look after his timber and he discovered a still on the land. He reported that to a deputy sheriff, who reported it to the sheriff. The sheriff and deputy and this citizen went upon the land; found Wallace and another operating the still; saw them leave following a path which led from the still to the Wallace home; the sheriff undertook to intercept Wallace before he could reach his home; did approach Wallace, threw his flashlight upon him and Wallace fled, the sheriff recognizing him. Wallace was later arrested without a warrant. Here Wallace owned the land on which the still was operated and he was seen in the act of committing the crime before the arrest.

The two cases nearest in point, which might seemingly justify this arrest, are Millette v. State, 167 Miss. 172, 148 So. 788, and Parks v. State, 180 Miss. 763, 178 So. 478. However, the Parks case is not authority justifying

the arrest in the case at bar. In that case the sheriff of Tippah County called the sheriff of Union County over the telephone and told the Union County sheriff that a new Plymouth coach automobile was headed south towards Union County on Highway 15 "loaded with whiskey" and was being driven by a white man accompanied by a yellow negro, and that if the sheriff of Union County would station himself on that highway he could intercept the automobile. "The sheriff of Union County promptly acted on the information, and in company with other officers, drove his car about three miles north towards Ripley on Highway No. 15, and there he saw a new Plymouth coach automobile proceeding south, occupied by a white man and a yellow negro." The Plymouth passed the officers, "who then gave chase." The fleeing car was being driven by defendant Parks, who ran a red light in New Albany and who began throwing whiskey bottles from the car. When finally overtaken by the officers they found the car seats soaked with whiskey and broken bottles containing whiskey yet in the car, and some of the whiskey thrown from the car was recovered by the officers. This, of course, is a different case from the one at bar on its facts. In the Parks case the sheriff of Tippah stated to the sheriff of Union County as a fact the Parks car was "loaded with whiskey," and being transported along the public highway by the driver of the Plymouth car. In effect, the sheriff of Tippah informed the sheriff of Union as a fact that Parks was then in the act of committing a crime. That is quite different from the statement of the sheriff of Noxubee County to the chief of police that he suspected appellant of the burglary because he was one of the persons in the drugstore the day before the night the store was burglarized.

The Millette case, on the facts as set out in the opinion, is a stronger case justifying the arrest of appellant. It is, in fact, on such statement of the facts, the strongest case the writer has been able to find. Millette was con-

victed of burglarizing the drugstore of A. C. Cox in West Point. The burglary took place the night of June 23, 1932. Cox made discovery of the crime when he came to his store the next morning. It had been accomplished by use of a ladder and entrance through a skylight. He reported it to West, the marshal of West Point. West immediately made an investigation. He found that Millette and his wife had been registered at the Brown Hotel in West Point under the assumed name of Jerome. They had checked out about two-thirty on the morning of the night the crime was committed. They had come into the hotel that night about nine-thirty, after which Millette left the hotel and was not seen to return "but the porter on night duty saw them as they left, for they settled their hotel bill." Millette had driven his car about town late at night, and the officers of the city had noted it was an Arkansas tag and had taken down the number. Millette had requested a local doctor to prescribe morphine for him. Some of the property taken from the Cox store was morphine. The marshal, after the crime had been reported to him by Cox the next morning and the marshal had made his investigation, discovering the stated facts, called Knox, the marshal of Okolona, Mississippi. "He told him that these suspects had left the town and gave him a description and asked for their apprehension. Knox replied that he knew the parties." That telephone conversation took place in the forenoon after the burglary; about four o'clock that afternoon Knox, without a warrant, arrested Millette in a drugstore in Okolona and placed him in jail. Knox then obtained a warrant to search Millette's automobile, which was parked on a street in Okolona. He found therein certain articles incriminating Millette in the burglary. Objection was made to this testimony but the court admitted it. It appears, however, that the search warrant was invalid. The case is of benefit here only as to what the marshal of West Point told the marshal of Okolona. The statement in the

opinion leaves that somewhat uncertain. If West reported to Knox what he had learned from his investigation these facts constitute a much stronger case justifying the arrest of Millette than do the facts of this case for the arrest of appellant. However, the marshal of Okolona did not obtain the evidence as result of the arrest of Millette but by virtue of what he thought was a valid warrant for such search.

(Hn 4) It is urged that the Court should consider the practical effect and take into consideration present-day methods of transportation, the means of escape and the risks taken by the officers of the law. The writer is well aware of the force of this argument. However, we are construing a statute as written. It is the function of this Court to construe statutes—not to amend or enact them. And, we think, it is impossible, from a logical standpoint, to say that one has reasonable grounds to believe another has committed a burglary merely and alone because he was in a store, where likewise were many other persons, sometime during the day before the night of the burglary.

It was said in the Craft case, supra, ''It may be that under modern conditions it would be better in the interest of the public protection and safety at large that arrests without warrant in felony cases should be permitted on suspicion that within the range of reasonable possibility the person to be arrested is the guilty party, eliminating the requirement of belief in the reasonable probability of his guilt; but such change would have to be made, within constitutional limitations, by the legislature and not by the courts—so that in the meantime we must maintain the law as it is written.''

This decision is, of course, confined to the facts of this case and the interpretation of the statute as now written as heretofore construed by this Court. We simply hold that it cannot be concluded from the statute and those holdings, as a matter of logic and common sense, that it is reasonable grounds for believing one has committed

burglary simply and alone because he, along with others, was seen in the store sometime during the day prior to the night the store was burglarized.

Reversed and appellant discharged.

*Alexander, Hall, Kyle* and *Holmes, JJ.,* concur.