258 So.2d 756 (1972)
James Dimp NORWOOD
v.
STATE of Mississippi.
No. 46649.
Supreme Court of Mississippi.
February 21, 1972.
Rehearing Denied March 20, 1972.
*758 Gene Brown, T.K. Holyfield, Meridian, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Sp. Asst. Atty. Gen., Jackson, for appellee.
*757 SUGG, Justice:
James Dimp Norwood, appellant, was convicted of armed robbery in the Circuit Court of Lauderdale County, Mississippi and sentenced to serve a term of 45 years in the Mississippi State Penitentiary. Appellant appealed his conviction and sentence and we affirm.
The office of the Western Union Telegraph Company, located on Fourth Street between Twenty Second and Twenty Third Avenue, in the City of Meridian, Mississippi was robbed on January 30, 1971 at approximately 9:45 A.M. Mrs. Glenn Downey was the only employee of the company on duty at the time of the robbery and described the robbery in detail and identified appellant at the trial as the person who committed the robbery.
Lemuel Kelly, an employee of Rayner Drug and Paint Store, located on Front Street and Twenty Third Avenue, testified that about 10:00 A.M. on January 30, 1971 he observed two colored men sitting in a car parked nearby. The car was described as a 1963 model Pontiac, blue with a white top, with an Alabama tag on it. The car was moved to a second parking place in the immediate area and both occupants of the car got out. The driver went to a parking meter, then both men went east on Front Street to Twenty Second Avenue. After standing there a short time the driver came back west on Front Street and the other man, later identified as the appellant, went north on Twenty Second Avenue.
Kelly observed the driver return, enter the car, and in less than ten minutes appellant ran back toward the car holding his coat. Kelly testified the man dropped something, picked it up, got into the car which pulled away and turned off Front Street traveling south on Twenty Second Avenue toward the overpass.
Kelly saw Officers Sudberry and Thompson on Front Street, reported the incident to them and gave a description of the automobile to them.
Pete Cox, a Quitman, Mississippi policeman, was on duty in a patrol car on January 30, 1971 when he received notification over the Highway Patrol radio that there had been a robbery in Meridian at the Western Union office, that the suspects were traveling in a white over blue 1964 Pontiac, Alabama license, numbers unknown. Cox began patrolling Highway 45, the route between Quitman and Meridian, and after several trips on this route, he saw an automobile which fit the radioed description. The only person visible in the car was the driver, a Negro male. Cox turned around, overtook the car and the driver was prevented from turning into a one-way street by oncoming traffic, so he then turned into a drive between the bank *759 and the post office. The drive was a dead end and Cox blocked the drive with his patrol car.
The driver, King John Stanley, was arrested and turned over to the Chief of Police of Quitman who had responded to Cox's radio dispatch that he had the suspect stopped. About this time a part-time deputy came out of the post office and Cox asked him to move the car so he could get the patrol car out of the street. The part-time deputy opened the door and the appellant was lying face down on the floor board behind the front seat. Cox asked the appellant to get out of the car but the appellant just looked up at him, whereupon Cox reached down and helped him out. Cox stated that he thought appellant was drunk at the time, but when he got out, part of the money and a .22 pistol fell out of his coat. Cox arrested the appellant for suspicion of burglary, searched him, and recovered $1884.00 in cash, money order receipts in the amount of $718.35 and a .22 pistol.
J.E. Dandridge, a Detective for the Meridian Police Department, went to Quitman on January 30th where the appellant was turned over to him, along with the cash and money order receipts. Dandridge and another Meridian Detective, Charles Glover, returned appellant and King John Stanley to Meridian, Mississippi, detained them at the Meridian Police Department for approximately an hour to an hour and a half during which time the appellant was photographed and fingerprinted. Appellant was asked if he wished to give a statement, and upon declining was not questioned about the robbery. Appellant stated that he would secure an attorney of his choice.
An audit of the Western Union Telegraph Company office revealed that $1884.00 in cash and $718.35 in cash non-negotiable money order receipts were missing from the office.
Appellant remained in jail in Meridian, Mississippi until April 19, 1971, at which time he voluntarily appeared at a preliminary hearing for King John Stanley and testified that he committed the robbery at the Western Union Office without the knowledge or assistance of King John Stanley.
Appellant did not testify at his trial and the only witness offered in his behalf was the jailer for the Lauderdale County Sheriff's Department who testified that the appellant had been in jail at all times except when he was taken from the jail on April 19, 1971 by two city detectives to attend the preliminary hearing of King John Stanley and at other times to appear in circuit court.
Appellant assigns and argues nine errors and these assignments of error will be discussed in the order made.
The first assignment of error is that the trial court erroneously overruled the demurrer to the indictment exhibited against the appellant.
Omitting the formal parts, the indictment is as follows:
That King John Stanley and James Dimp Norwood in said Lauderdale County and State on the 30th day of January, A.D., 1971 did then and there in and upon the person of one Mrs. Glenn Downey, employee of Western Union Telegraph Company, a corp., unlawfully, feloniously and violently make an assault, and her the said Mrs. Glenn Downey did then and there put in fear of some immediate injury to her person, by the exhibition of a certain deadly weapon, to-wit: a .22 cal. pistol, and from the person and from the presence of the said Mrs. Glenn Downey, and against her will by violence to her person, with the intent the goods, chattels, and money then and there on the person and in the presence of the said Mrs. Glenn Downey, then and there to feloniously and violently steal, rob, seize, take and carry away; And then and there $1,884.00 in cash the personal property *760 of Western Union Telegraph Company, a corporation, from the person and from the presence of the said Mrs. Glenn Downey by putting the said Mrs. Glenn Downey in fear of some immediate injury to her person and by violence to her person, by the exhibition of a certain deadly weapon, to-wit: a .22 cal. pistol and against the will of the said Mrs. Glenn Downey then and there feloniously and violently did steal, rob, seize, take and carry away contrary to the form of the statute in such cases made and provided, and against the peace and dignity of The State of Mississippi.
Appellant's attack on the indictment is based on the following grounds: (1) The indictment charges no crime known to the law and is wholly void. (2) The indictment attempts to charge the defendant with robbery but said indictment on the face thereof charges Mrs. Glenn Downey with attempted robbery of herself. (3) The indictment fails to state that any robbery was actually accomplished.
The indictment set out is similar to one approved in the case of State v. Snowden, 164 Miss. 613, 145 So. 622 (1933), where this Court held that if the offense is charged substantially and certainly in language equivalent in meaning to the language of the statute, it is sufficient. Although it is possible for the indictment to have charged the offense in clearer language, the language used is sufficient to charge the crime of armed robbery.
While it would be clearer for the indictment to state "$1884.00 in cash" after the words  "did steal, rob, seize, take and carry away" the omission of these words is not fatal.
The second assignment of error is that the trial court erroneously overruled defendant's motion to suppress and quash illegally obtained evidence. Appellant argues in support of this assignment of error that when Pete Cox, the police officer of Quitman, Mississippi, arrested appellant for suspicion of robbery based on the description of the automobile, he then had no reason to believe the persons inside the car were the ones who committed that robbery.
Mississippi Code 1942, Annotated, Section 2470 (Supp., 1971) provides:
"An officer * * * may arrest any person without warrant, * * * when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; * * *"
The rule has been stated in many cases that it is not the duty of the arresting officer to determine the guilt of the person before making an arrest, but it is his duty to make an arrest where a felony has been committed and the officer has a reasonable ground to suspect and believe the person proposed to be arrested to have committed it. It is not required that probable cause be established solely by facts within the personal knowledge of the arresting officer, but the determination of probable or reasonable cause permits the use of common sense and honest judgment by police officers. Lathers v. United States, 396 F.2d 524 (5th Cir.1968); Hurst v. State, 240 So.2d 273 (Miss. 1970); McCollum v. State, 197 So.2d 252 (Miss. 1967).
Under a similar set of facts an arrest and search was held to be valid in the case of Dunning v. State, 251 Miss. 766, 171 So.2d 315 (1965); certiorari denied 386 U.S. 993, 87 S.Ct. 1310, 18 L.Ed.2d 339 (1967). Dunning, supra, quoted from Bell v. United States, 102 U.S.App.D.C. 383, 388, 254 F.2d 82, 87 (1957) certiorari denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958) where the following principle was stated:
"The sum total of the reams that have been written on the subject is that a peace officer may arrest without a warrant when he has reasonable grounds, in light of the circumstances of the moment as viewed through his eyes, for belief *761 that a felony has been committed and that the person before him committed it."
Under the facts and circumstances, we are of the opinion and hold that Officer Cox had probable and reasonable cause to arrest the appellant.
In support of his argument, appellant relies on Laster v. Chaney, 180 Miss. 110, 177 So. 524 (1937). In this case the court held that an officer in making a warrantless arrest on suspicion of felony, may act upon information furnished him by a person known to be credible and that this may be done by telephone; but such information must be sufficient in its factual statement to justify the officer in believing that a felony had been committed and that there was good factual reason to definitely suspect that the party arrested is the felon. All that was communicated to the officer was a request to arrest appellant with a statement that the reasons therefor would be furnished later. This case is not authority for the position of appellant.
Appellant also relies on the case of Pollard v. State, 233 So.2d 792 (Miss. 1970) which held that a deputy sheriff did not have probable cause to arrest a felon at the time of initial pursuit and peaceful subsequent acts of appellant in resisting unlawful arrest should have been excluded. Pollard has no application to the case at bar because the radio dispatch from the Mississippi Highway Safety Patrol gave Officer Cox reasonable cause to pursue the described automobile and arrest the occupants.
In the third and fifth assignments of error the appellant assigns as error the refusal of the trial court to suppress and quash declarations by defendant against interest and the failure to appoint counsel for him at critical stages in the proceedings against him.
After appellant's arrest he was carried to the Sheriff's office of Clarke County and the Sheriff explained to him his constitutional rights under Miranda and at 10:30 A.M. on January 30, 1971 appellant signed the following statement:
"YOUR RIGHTS
 Place Quitman 
 Date 1-30-71 
 Time 10:30 A.M. 
Before we ask you any questions, you must understand your rights.
You have the right to remain silent.
Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
WAIVER OF RIGHTS
I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.
 Signed /s/ James Norwood
/s/ James F. Sudberry
Witness /s/ W.C. Dansby
Witness /s/ Pete Cox
Time __________
 /s/ Billy Kemp Chief"
*762 Appellant was detained in jail in Meridian, Mississippi until April 19, 1971 when he appeared at the preliminary hearing of King John Stanley and testified that he committed the armed robbery charged in the indictment. Before he testified, the district attorney gave him ample warning of his right to remain silent, advised him that any statement he made would be used against him in his own case and stated that he could stop answering questions at any time. The defendant had previously advised officers that his family was going to secure an attorney. At the preliminary hearing for Stanley, the district attorney told the appellant when he secured an attorney to have the attorney contact him and a preliminary hearing would be set for the appellant if he so desired.
In addition to the warning of the district attorney, the attorney representing King John Stanley also advised the appellant against testifying. Appellant was returned to the Lauderdale County jail and remained there until indicted when an attorney was appointed for him.
Appellant relies on Lathers v. United States, supra, but Lathers has no application because the defendant in that case was not advised an attorney would be furnished him if he could not employ one. In the instant case appellant was specifically advised in writing that if he could not afford a lawyer one would be appointed for him before any questioning if he wished.
The statement that appellant made at the hearing of King John Stanley was freely and voluntarily made after he had been properly advised of his constitutional rights and it was properly admitted by the trial court. The waiver of rights signed by the appellant shortly after his arrest is identical to the F.B.I. form entitled "Your Rights" approved in Gordon v. State, 222 So.2d 141, 143 (Miss. 1969).
Appellant was unequivocally offered the services of an attorney immediately after his arrest. Throughout the time of his incarceration and up until his indictment by the grand jury, he led the officers to believe that his family was going to employ an attorney for him. Before arraignment and trial, the circuit judge appointed an attorney for him and appellant, by his actions, waived the right to have an attorney appointed before that time. It is apparent from the record that the district attorney was under the impression that the appellant desired to secure his own attorney and it is apparent that if appellant had advised the district attorney at the time of the preliminary hearing of King John Stanley that he desired the services of an attorney, one would have been appointed immediately. No prejudice is shown by the failure of appellant to have an attorney and every statement that he made was after ample warning by the district attorney, and the attorney who represented King John Stanley.
By his fourth assignment of error appellant contends that he was denied a speedy and public trial as required by Article 3, Section 26 of the Constitution of the State of Mississippi and the Sixth Amendment to the Constitution of the United States.
On May 25, 1971 a jury was selected and after the selection of the jury the court heard motions of the defendant to suppress illegally obtained evidence and to quash illegally obtained declarations. The hearing on the motions was in open court from approximately 4:00 p.m. until 6:00 p.m. out of the presence of the jury. The courthouse doors were locked at 5:30 p.m.
Appellant made a motion for mistrial which was overruled by the trial court with the comment that the court had no knowledge of any door being locked. The court then stated there had been many people in attendance on the trial from 8:30 in the morning until after 5:00 p.m. and that there were some people in the courtroom after the jury left to spend the night under the supervision of the bailiffs.
Appellant relies on United States v. Sorrentino, 175 F.2d 721 (3rd Cir., 1949) and United States v. Kobli, 172 F.2d 919 (3rd *763 Cir., 1949). In Kobli the trial judge excluded the public over the objection of the defendant during the selection of the jury but permitted the public to attend during the last three days of the trial. The United States Court of Appeals, 3rd Circuit, held this was error. Unlike Kolbi, the trial judge in the instant cause did not clear the courtroom, but the front door to the courthouse was locked for approximately 30 minutes during the taking of testimony on a motion of the defendant.
Sorrentino, supra, has no application because the right to a public trial was waived by the defendant. This Court has recognized in Brown v. State, 222 Miss. 863, 77 So.2d 694 (1955) and Hollis v. State, 221 Miss. 677, 74 So.2d 747 (1954) the right of a defendant to have a public trial. It was noted in these cases that there is a traditional Anglo-American distrust for secret trials.
In the instant case the courthouse doors were locked for a period of 30 minutes while motions were being presented to the court, and it does not otherwise appear that there was any restriction, limitation or exclusion of the public during the trial.
The term "public trial" contemplated by our Federal and State Constitutions is a trial which is not secret and one that the public is free to attend. To a great extent it is a relative term and its meaning depends largely on the circumstances of each particular case. Hampton v. People, 171 Colo. 153, 465 P.2d 394 (1970).
We hold that this was a public trial within the meaning of our Federal and State Constitutions.
Although the appellant does not argue the proposition that he was denied a speedy trial, it is noted that the appellant was indicted at the first term of the Circuit Court of Lauderdale County, Mississippi held after the commission of the crime charged at which a grand jury was empaneled, and was tried at the same term.
By his sixth assignment of error appellant argues that the trial court erred in giving each prospective juror a pamphlet entitled "Juror's Handbook". Appellant urges the pamphlet contained instructions of law which were illegally and improperly given to the jury that decided this case.
The distribution of educational handbooks to persons summoned for jury service has been favored generally and an exhaustive annotation of authorities appears in 89 A.L.R.2d 199. At pages 203 and 204 the text writer states:
Appellate reaction to the practice of distributing educational handbooks or primers to persons summoned for jury service has been favorable generally, with some of the courts praising and terming commendable the attempt to better acquaint jurors with their duties and responsibilities and to increase their understanding of the processes of a trial, and other courts holding at least that the distribution and use of jury pamphlets or primers is not improper and does not alone constitute reversible error where no specific prejudice is shown. In fact, there is now no case which may be considered authoritative on the proposition that it is prejudicial error for a trial court to have copies of a jury pamphlet of the kind described above distributed to prospective jurors.
Principal objections to the use of such jury handbooks have been rather uniformly rejected in recent cases, the courts holding that their distribution to prospective jurors does not constitute an impingement or encroachment on the jury system or invade basic rights relating to trial by jury; that the distribution of the booklets in advance of trial does not violate the right of a defendant to be present at every stage of his trial and to have the jury instructed in his presence; that the handbook is not equivalent to a final charge or set of instructions to the jury and will not be so construed where it is contended that distribution *764 of the booklet violates provisions specifying the time or manner of charging a jury or that particular statements in a pamphlet are prejudicial; and that specific legislation is not necessary to authorize the distribution of the pamphlets to jurors.
......
Perhaps the most common objection to jury pamphlets has been that particular booklets contained specific passages or statements which were allegedly damaging or prejudicial; and the courts also have recognized the possibility that such pamphlets may contain misinformation or minimize the effect of the actual instructions given in a particular case. However, although many allegedly objectionable statements have been examined, only a few cases have found erroneous or misleading language, and even fewer cases have found that such language required the reversal of a verdict.
An opportunity to secure a review of questions arising from the use of jury handbooks may be lost, of course, through failure to make proper and timely objection. Since the practice of distributing the handbooks is not of itself improper, the rule apparently, in the federal courts at least, is that where a reversal is sought on the ground that use of the handbook was prejudicial, it must be shown that a particular juror read the booklet, that his impartiality was affected, and that a proper challenge for cause on voir dire was erroneously overruled... .
The appellant argues that the juror's handbook violates Section 1530 Mississippi Code 1942 Annotated which prohibits the judge from summing up or commenting on the testimony or charging the jury as to the weight of the evidence. An examination of the handbook shows that it is not a set of instructions for any specific case but rather a general guide for persons who might be unfamiliar with the duties of a juror.
The booklet itself makes this amply clear and on the last page the following appears:
This is simply a pamphlet to show you the importance of your office as a juror and is not an instruction on the law in any case, and you are not to consider it as an instruction in your deliberations in any case, as you will be instructed in each case as to law applicable to that case.
The court cannot instruct you as to the law in any case until so requested by the attorneys and those instructions must be in writing and will control as to law of this particular case.
The appellant has not isolated specific passages as being prejudicial and in United States v. Allied Stevedoring Corp., 258 F.2d 104 (2nd Cir.1958), certiorari denied 358 U.S. 841, 79 S.Ct. 58, 3 L.Ed.2d 76, the court said that although the defendant's argument proceeded as if the isolated passages were part of the instructions given to the jury in the case by the district court, this was unwarranted because even a casual perusal of the handbook showed that it was not a set of instructions for a specific case, but rather a general guide for persons unfamiliar with the duties of a juror.
We hold that no prejudicial error was committed by distribution of the Juror's Handbook.
In his seventh suggestion of error, appellant complains that the trial court restricted the defendant's right to question the jury and prejudiced the defendant because the court accused the defendant's attorney of filibustering and referring to some of the questions propounded by appellant's attorney as being insignificant.
On page 72 of the record the following appears:
BY THE COURT: (Interposing)
You go right ahead and you ask them just as long as you want to. I don't think *765 that you should filibuster. Let's go ahead.
BY MR. BROWN:
Yes, sir; I am just trying to protect the rights of my client.
BY THE COURT:
I want you to protect every right. You are an honorable lawyer, and I look upon you as being highly qualified. I appointed you to defend this man, and you make any record you would like. Ask as many questions as you would like.
Again, on page 49 of the record, the court stated:
Now, let's get along with the voir dire in this case. We are not going into those insignificant questions. I am going to ask you to submit the list of questions to the Court if that's what you are trying to get at.
In Vail v. City of Jackson, 206 Miss. 299, 40 So.2d 151, 41 So.2d 357 (1949), the Court stated:
Volume 64 C.J. at page 92, states the rule as follows: "Counsel may properly be directed to refrain from delay, or to get on with the trial, or the judge may comment upon a waste or excessive consumption of time in the trial so long as counsel is not unduly restricted or his knowledge challenged, or his motives impugned; and remarks expressing impatience with counsel, even though perhaps unwarranted, are not fatal where not such as to cause material prejudice... ." (Id. at 328, 41 So.2d at 361).
A careful analysis of the voir dire examination of the jury by appellant's counsel reveals that he was not unduly restricted by the trial judge and the comments of the judge above quoted, although expressing impatience with counsel, were not fatal because they did not cause material prejudice to the appellant. His counsel was permitted an exhaustive and searching examination of the prospective jurors.
Appellant's eighth suggestion of error assigns as error the action of the trial court in overruling defendant's motion for a directed verdict.
The rule is clearly stated in McLendon v. State, 187 Miss. 247, 191 So. 821 (1939) as follows:
The rule in regard to the peremptory instruction is the same in criminal as in civil cases, Justice v. State, 170 Miss. 96, 154 So. 265, and that rule, to restate it, is that taking all the evidence in behalf of the state as true, together with all the sound or reasonable inferences that may be drawn therefrom, if there be enough to support a verdict of conviction, the peremptory must be denied. 187 Miss. at 253, 191 So. at 822.
The requested peremptory instruction was properly refused because there was ample evidence to support the verdict of conviction.
By his ninth assignment of error appellant questions the refusal of the trial court to grant the following instruction:
The court charges the jury that if you believe from the evidence that the confession, if any, was brought about by fear, duress, intimidation, or hope of reward, or that such confession, if any, was untrue then you may disregard it all together.
This instruction is based upon a misconception of the separate duties of the judge and jury. It is the judge's duty to determine whether or not the confession is admissible in evidence before the jury. The question as to whether or not it should be admitted in evidence is governed by the rule that the judge should not permit the jury to hear the evidence if the proof tends to show that the alleged confession was made involuntarily as a result of fear or intimidation. If the judge committed error in permitting the confession to be *766 heard by the jury, this is an error of the trial judge and may be corrected on appeal. Ellis v. State, 65 Miss. 44, 3 So. 188 (1887).
After the trial judge has permitted the confession to be heard by the jury it may determine the weight to be given the alleged confession, and this includes all the attendant circumstances showing the strength or weakness of the statement. The jury is the judge of the weight and worth of the confession admitted in evidence by the judge. Rhone v. State, 254 So.2d 750 (Miss. 1971).
It is true that at one time in the judicial history of this state the Supreme Court of Mississippi required similar instructions to be given to the jury. Johnson v. State, 89 Miss. 773, 42 So. 606 (1906); Garrard v. State, 50 Miss. 147 (1874), (Garrard was overruled in Ellis v. State, supra.)
Since the early days of this Court we have become more inclined to go back to the rule expressed in Ellis, supra, that the Court will not permit the jury to determine whether or not the confession should be admitted in evidence.
In Brooks v. State, 178 Miss. 575, 582, 173 So. 409, 411, (1937) in passing upon a similar instruction, we said:
The instruction, in effect, submits to the jury the admissibility vel non of the evidence of the confessions, with which the jury have nothing to do. The admissibility of a confession is for the determination of the trial judge; and, when admitted, the jury may consider it in the light of the evidence by which it was obtained and give it such weight and credibility as they think it is entitled. They should not reject it entirely unless they believe from the evidence that it is false. Ellis v. State, 65 Miss. 44, 3 So. 188, 7 Am.St.Rep. 634; 2 Wigmore on Evidence (2d Ed.) § 861.
The holding of this Court in the Brooks case was reaffirmed in Wright v. State, 212 Miss. 491, 54 So.2d 735 (1951).
This rule is now firmly fixed as a part of the case law of this state. See the following cases:
Buckler v. State, 171 Miss. 353, 157 So. 353 (1934).
Whittaker v. State, 169 Miss. 517, 142 So. 474 (1932).
Tyler v. State, 159 Miss. 223, 131 So. 417 (1930).
Stepney v. City of Columbia, 157 Miss. 193, 127 So. 687 (1930).
Stubbs v. State, 148 Miss. 764, 114 So. 827 (1927).
Brown v. State, 142 Miss. 335, 107 So. 373 (1926).
Lee v. State, 137 Miss. 329, 102 So. 296 (1924).
Hunter v. State, 74 Miss. 515, 21 So. 305 (1896).
The United States Supreme Court in Lego v. Twomey, Warden, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618, decided January 12, 1972, held that where a trial judge ruled on a coercion claim with reference to a confession, the appellant was not entitled to have the jury decide the claim anew. This holding is in accord with the established law of this state.
For the foregoing reasons, the conviction of the appellant is hereby affirmed.
Affirmed.
RODGERS, P.J., and BRADY, PATTERSON and SMITH, JJ., concur.